211 N.J. Super. 177 (1986)
511 A.2d 680
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BILLY REED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 22, 1986.
Decided June 13, 1986.
*179 Before Judges MICHELS, DEIGHAN and STERN.
Philip Stephen Fuoco argued the cause for appellant.
Barbara A. Forte, Assistant Prosecutor argued the cause for respondent (Samuel Asbell, Camden County Prosecutor; Barbara A. Forte, of counsel and on the brief).
Susan J. Abraham, Assistant Public Defender argued the cause for amicus curiae Office of the Public Defender (Thomas S. Smith, Jr., Acting Public Defender, attorney, Lucy M. Rosano, Assistant Public Defender, of counsel and on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Defendant William Reed was indicted for aggravated manslaughter in violation of N.J.S.A. 2C:11-4a. After a jury trial he was found not guilty of aggravated manslaughter but was convicted of the lesser included offense of reckless manslaughter in violation of N.J.S.A. 2C:11-4b(1). Defendant's motion for a new trial and for a judgment of acquittal was denied. He was then sentenced to a term of ten years with five years parole ineligibility. Additionally, a $1,000 Violent Crimes Compensation Board penalty was imposed. Defendant's subsequent motion for reconsideration of sentence was denied.
On November 18, 1985, we granted the public defender's request to file a brief amicus curiae addressing whether the jury must be informed of the impact of the Graves Act, N.J.S.A. 2C:43-6c, which requires mandatory sentencing in crimes involving a firearm.
The material facts concerning this unfortunate incident are as follows: On March 11, 1984 the victim, Lisa Kline, age 16, was visiting the residence of the defendant in Winslow Township. *180 Defendant, then 23 years old, had known Lisa for about six months. They had been dating on a regular basis and Lisa often visited defendant's home. On this particular occasion defendant and Lisa went to defendant's room where they were "just joking around." Defendant reached behind the bedroom door, picked up one of the three shotguns he kept there, pointed it at Lisa, then pulled the trigger. The gun discharged and Lisa died from the resulting wound which was inflicted from a range of three feet or less. There was no evidence of any motive, disagreement or other basis to prompt this tragic incident.
Immediately after the shooting, other members of defendant's family who were present in the house at that time, summoned an ambulance and the police. The first officer on the scene found the victim lying on defendant's bed. A shotgun containing one spent round of ammunition was found lying on the floor. The police officer transported defendant, who he found crying at the kitchen table, to the police station. Another officer who questioned defendant at the police station testified that defendant "looked upset" and was "like crying" when he observed him at the station. Although he had difficulty speaking, defendant gave a recorded statement and was "very cooperative" with the police.
At trial, defendant stated that he never knowingly brought a loaded weapon into the house and he did not think that the shotgun was loaded. The gun was last used when he and a friend went hunting one or two weeks before the occurrence. Upon their return, he told his friend to unload the gun, but admitted that he did not check the shotgun to make sure it was not loaded.
Defendant admitted that he was experienced with shotguns and was aware of the risks in handling firearms. On one occasion previous to this incident the same gun accidentally discharged while he was cleaning it.
On appeal, defendant presents the following issues:

*181 POINT I THE LOWER COURT ERRED BY FAILING TO SUBMIT A NEGLIGENCE INSTRUCTION TO THE JURY.
POINT II THE LOWER COURT ERRED IN SUBMITTING THE AGGRAVATED MANSLAUGHTER CHARGE TO THE JURY, SINCE THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE CHARGE.
POINT III THE LOWER COURT ERRED BY FAILING TO INSTRUCT THE JURY THAT A GUILTY VERDICT WOULD RESULT IN A MANDATORY MINIMUM SENTENCE UNDER THE GRAVES ACT.
POINT IV THE IMPOSITION OF THE MAXIMUM TERM OF 10 YEARS AND THE MAXIMUM TERM OF PAROLE INELIGIBILITY UNDER THE GRAVES ACT WAS IN DEROGATION OF THE SENTENCING GUIDELINES OF THE CODE AND CONSTITUTED AN ABUSE OF DISCRETION.

I.
Defendant argues that, in light of the fact that negligent homicide is not a crime in New Jersey, the trial judge should have granted his request to instruct the jury regarding the difference between reckless and negligent conduct. He points out that the model charge for death by auto, N.J.S.A. 2C:11-5, includes an instruction that mere carelessness or negligence should not result in a conviction. The State contends that, since the trial judge adequately and properly defined recklessness and the other elements of manslaughter, there was no need to define negligence.
Although criminal negligence is a type of culpability defined in N.J.S.A. 2C:2-2b(4), unlike the Model Penal Code, § 210.4 (1962), there is no crime of negligent homicide in New Jersey.[1] The difference between the two terms is the degree of culpability: "recklessness" occurs when the actor "consciously disregards a substantial and unjustifiable risk," N.J.S.A. 2C:2-2b(3); "negligence" occurs when an actor "should be aware of a substantial and unjustifiable risk." Id. subsection (4).
*182 This same argument was raised and rejected in State v. Curtis, 195 N.J. Super. 354 (App.Div. 1984), certif. den. 99 N.J. 212 (1984). There defendant was tried for murder and theft and was found guilty of the lesser included offense of aggravated manslaughter. The jury was instructed on aggravated and reckless manslaughter. On appeal defendant argued that the court erred in not charging his request on negligent homicide or the meaning of an accidental killing. Id. 195 N.J. Super. at 368-369. This court noted that "the jury was told that if the contention that the shooting was accidental caused the jury to have reasonable doubt then the only verdict would be not guilty." Id. at 369.
Curtis relied upon the Supreme Court's observations in State v. Reyes, 50 N.J. 454, 464-465 (1967):
Defendant's requests to charge on the subject of misadventure were designed to call to the special attention of the jury that if the decedent had been shot accidentally, he should be found not guilty.... We do not see how defendant suffered any "wrong or injury" thereby. R.R. 1:5-1(a). It is evident to us that the jury could not fail to realize, without any specific instruction on the subject, that if it should believe defendant's tale of an accidental shooting, it was bound to return a not guilty verdict. It knew this was the defense and the contention had been fully discussed in the summations. Moreover, the court did instruct that, in order for the jury to find defendant guilty of any of the offenses specified, the State had to prove beyond a reasonable doubt all of the essential elements thereof, which were spelled out in detail. It would be obvious to the jury that "accident" was the exact opposite of these necessary elements. In addition, the court said that the verdict would be not guilty if the State had not proved its charge beyond a reasonable doubt. All of the was adequate under the circumstances.
Here, the trial judge charged the normal instructions concerning presumption of innocence and burden of proof. He adequately defined recklessness as an element of aggravated manslaughter and reckless manslaughter and specifically explained the meaning of "consciously disregards a substantial and unjustifiable risk." The jury was told that if the killing did not come within the court's instructions on aggravated manslaughter or manslaughter, defendant must be acquitted on those charges:

*183 Now, of course, if you determine that the death of the victim, Lisa Kline, was accidentally caused, was not the result of the element of aggravated manslaughter, or manslaughter, as I have defined them to you, and has not been so proved beyond a reasonable doubt, then, of course, he should be acquitted or either or both of those charges as you so find.
Again, it is the responsibility of the State to prove Mr. Reed guilty of either aggravated manslaughter, or manslaughter, as the case might be, beyond a reasonable doubt before you may find him guilty of either of those charges.
We find no error or abuse of discretion by the trial judge in declining to charge "negligence" as requested by defendant. The charge was substantially the same as in Curtis.

II.
Defendant argues that the aggravated manslaughter charge should not have been submitted to the jury because there was insufficient evidence of "circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4a. Defendant claims that he was prejudiced by the submission of the charge because it may have led the jury to a compromise verdict.
N.J.S.A. 2C:11-4 defines aggravated manslaughter and reckless manslaughter:
a. Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.
b. Criminal homicide constitutes manslaughter when:
(1) it is committed recklessly.
To sustain a conviction for aggravated manslaughter the State must prove: (1) that a person died; (2) that defendant caused the death, and (3) that defendant acted "recklessly ... under circumstances manifesting extreme indifference to human life." For reckless manslaughter the State must also prove the first two elements of aggravated manslaughter. As to the third element, the State must prove merely that the actor "should be aware of a substantial and unjustifiable risk" that death would result from his conduct. 33 N.J. Practice, (Miller, Criminal Law) (1982), § 97 at 107. Reckless manslaughter is a lesser included offense of aggravated manslaughter. Id.; *184 N.J.S.A. 2C:1-8d, e; State v. Murphy, 185 N.J. Super. 72 (Law Div. 1982). In other words,
[t]he ultimate question for the factfinder is whether the homicide was committed under circumstances involving a mere possibility of death or did the circumstances involve a probability of death. If the former the verdict must be reckless manslaughter but if the latter the verdict must be aggravated manslaughter. [Curtis, 195 N.J. Super. at 365; emphasis supplied].
We are satisfied the trial judge did not err in charging aggravated manslaughter. Defendant, who was familiar with firearms, retrieved a shotgun and, without checking to see whether it was loaded, aimed it at an innocent victim and pulled the trigger causing death. These facts may be considered "circumstances manifesting extreme indifference to human life." A jury could have found that the defendant was guilty of aggravated manslaughter.

III.
Defendant and the public defender insist that the trial court erred by failing to grant the defendant's request to instruct the jury that a guilty verdict would result in a mandatory minimum sentence under the Graves Act. See N.J.S.A. 2C:43-6c. While this issue has not previously been raised or decided in New Jersey, trial by jury in criminal cases in New Jersey and other states traditionally requires a separation of the functions of a jury and the court in non-capital cases.
The jurors decide the facts in accordance with the law as instructed by the court, and the court determines the punishment to be imposed upon the jury finding of guilt. Pope v. United States, 298 F.2d 507, 508 (5 Cir.1962), cert. den. 381 U.S. 941, 85 S.Ct. 1776, 14 L.Ed.2d 704 (1965). From this allocation of responsibility the general rule emerged that jurors are not informed as to the possible sentence of defendant. Pope v. United States, supra. Pragmatically, in New Jersey the jury cannot be informed as to all the possibilities of a sentence in the event defendant is found guilty because of the prerequisite of a presentence report, N.J.S.A. 2C:44-6a; R. *185 3:21-2(a), prior to sentencing. Without such a report it is impossible and improper for the trial court to evaluate the sentence in a criminal case. Moreover, it is impossible to instruct the jury concerning the aggravating and mitigating circumstances and all of the elements that go into the determination of a sentence.
This traditional rule in non-capital criminal matters, which evolved in cases not requiring mandatory sentences, is based upon the rationale that informing the jury of the possible sentence would: (1) draw attention away from their chief function  to judge facts; (2) open the door to compromise verdicts, and (3) confuse the issue or issues to be decided. Pope v. United States, 298 F.2d at 508. Another suggested reason is that the instruction "can be of no aid to the jury in determining the issue of guilt." 75 Am.Jur.2d, Trial, § 888 at 762. The functions of the court and jury in criminal cases are analogous to the proceedings in a bifurcated civil trial where one jury is called upon to determine the issue of liability, and, in the event the defendant is found liable (guilty in a criminal case), another jury (the court in a criminal case) determines the amount of the verdict (sentence in a criminal case). R. 4:38-2(b).
While the cases relied upon by the State indicate it is the "function of the jury to adjudge the degree of guilt and for the court to pronounce sentence," State v. Grillo, 11 N.J. 173, 189 (1952), cert. den. 345 U.S. 976, 73 S.Ct. 1123, 97 L.Ed. 1391 (1953); State v. Pereira, 202 N.J. Super. 434, 439 (App.Div. 1985), they do not involve mandatory sentences and therefore are not precedential to the issue. However, the federal courts and at least one state court have upheld the traditional rule in cases involving mandatory sentences. Chapman v. United States, 443 F.2d 917, 920 (10 Cir.1971) (trial court's refusal to instruct jury that defendant's conviction of receiving and concealing marijuana would result in a mandatory five year term with no parole or probation was affirmed). See also United States v. Del Toro, 426 F.2d 181, 184 (5 Cir.1970), cert. den. 400 *186 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 60 (1970); State v. Edwards, 17 Wash. App. 355, 362, 563 P.2d 212, 217 (1977) (sentence is not a proper issue for the jury's deliberation, except in capital cases). Contra State v. Jackson, 450 So.2d 621, 623 (La. 1984).
The cases cited by defense counsel and the public defender, Roman v. Mitchell, 82 N.J. 336 (1980) and State v. Krol, 68 N.J. 236 (1975), as analogous to their argument that the jury should be informed of the mandatory sentences, are not convincing. As to Krol, the reason for informing the jury of the ultimate result in the event of a finding of not guilty by reason of insanity is not apropos to mandatory sentencing. An instruction is required in the insanity cases to insure that the jury will not be under the mistaken impression that the defendant will necessarily be freed if found not guilty by reason of insanity or indefinitely committed to a mental institution. Id. at 265; see Government of Virgin Islands v. Fredericks, 578 F.2d 927, 935 (3 Cir.1978).
While in Roman, the Supreme Court held that the jury must be informed of the legal effect of its factfindings in comparative negligence cases, Roman, 82 N.J. at 346, the rationale does not apply to criminal cases. As noted in Roman, the jury may mistakenly assume that their findings as to percentages of negligence would result in a money judgment apportioned in accordance with its determination without realizing that a plaintiff would receive no damages if his negligence is greater than 50%. Id. at 345. Further, without being informed as to the operation and effect of the percentages of negligence in relation to the amount of their verdict, the determination of the jury may very well be thwarted. Another difference is quite apparent: unlike criminal cases, in civil cases the jury normally determines not only liability (guilt or innocence in criminal cases), but also assesses damages (punishment in criminal cases).
We are not persuaded that where a mandatory imprisonment is required the jury should be instructed that a guilty verdict *187 would result in the mandatory minimum sentence. Such an instruction may very well lead to an invitation to the jury to neutralize the very purpose of the Graves Act, i.e., to punish and deter crimes committed with a firearm. See State v. Bill, 194 N.J. Super. 192, 193-194 (App.Div. 1984). Moreover, such a requirement would involve detailed instructions concerning the nature, operability, design and authenticity of the weapon, principles of accomplice liability and other factors, some of which are possibly unsettled, under which a mandatory sentence is required.

IV.
Defendant argues that the sentence is excessive and that the trial judge incorrectly considered certain elements of the crime as aggravating factors while ignoring some relevant mitigating factors. Defendant urges this court to modify the sentence or to remand for resentencing.
The scope of appellate review of sentencing decisions under the Code was announced in State v. Roth, 95 N.J. 334 (1984) and State v. Hodge, 95 N.J. 369 (1984). Roth summarized the court's function on appellate review:
In sum, then, appellate review of a sentencing decision calls for us to determine, first, whether the correct sentencing guidelines, or in this case, presumptions, have been followed; second, whether there is substantial evidence in the record to support the findings of fact upon which the sentencing court based the application of those guidelines; and third, whether in applying those guidelines to the relevant facts the trial court clearly erred by reaching a conclusion that could not have reasonably been made upon a weighing of the relevant factors. [Roth, 95 N.J. at 365-366].
The presumptive sentence for manslaughter, a second degree offense, is seven years. N.J.S.A. 2C:44-1f. Defendant was sentenced to a term of ten years with five years parole ineligibility pursuant to N.J.S.A. 2C:43-6c. In order to impose the mandatory ten year term, the court found the following aggravating factors weighed in favor of a higher term. N.J.S.A. 2C:44-1f:

*188 1. The nature and circumstances of the offense is the inexcusable and reckless handling and pointing of a shotgun at the deceased and the pulling of the trigger. [N.J.S.A. 2C:44-1a(1)].
2. The gravity and seriousness of harm inflicted on the victim was the ultimate, her death. [N.J.S.A. 2C:44-1a(2)].
3. There is a need for deterring others who handle firearms from doing so recklessly. [N.J.S.A. 2C:44-1a(9)].
Defendant does not contest the third factor. However, he does assert that the first two factors should not have been considered aggravating circumstances because they are elements of the offense.
In State v. Link, 197 N.J. Super. 615, 620 (App.Div. 1984), this court observed that, "[w]here an essential element of a crime is a specific fact ... that element may not be used as an aggravating factor to impose a custodial sentence that is longer than the presumptive term or to impose a period of parole ineligibility" not required by law. See State v. Yarbough, 100 N.J. 627, 633 (1985); State v. Pavin, 202 N.J. Super. 255, 266-267 (App.Div. 1985) (death of victim is implicit in death by auto cases and cannot be considered an aggravating factor); State v. Martelli, 201 N.J. Super. 378, 385 (App.Div. 1985). Death is obviously an element of manslaughter, N.J.S.A. 2C:11-4b, a type of criminal homicide. N.J.S.A. 2C:11-2. Therefore the second aggravating factor found by the trial court may not be used as an element for assessing the sentence.
Since it is self-evident that recklessness is an element of reckless manslaughter, N.J.S.A. 2C:11-4b(1), defendant urges that the first aggravating factor found by the trial judge should not have been considered. Further, the term "inexcusable" as characterized in this factor may be equated with "consciously disregards a substantial and unjustifiable risk," N.J.S.A. 2C:2-2b(3). Again, it appears that this aggravating factor is an ingredient of the offense.
The trial judge considered three mitigating factors under N.J.S.A. 2C:44-1b:
1. The defendant did not contemplate that his conduct would cause or threaten serious harm. [N.J.S.A. 2C:44-1b(2)].

*189 2. The defendant has no history of prior delinquency or criminal activity. [N.J.S.A. 2C:44-1b(7)].
3. The defendant's conduct was the result of circumstances unlikely to recur. [N.J.S.A. 2C:44-1b(8)].
From our review of the facts, N.J.S.A. 2C:44-1b(12), the willingness of defendant to cooperate with law enforcement authorities may also be a mitigating factor.[2] We are constrained to vacate the sentence and remand for resentencing.
The trial judge, of course, must balance the aggravating and mitigating factors and state reasons for imposing any sentence above the presumptive term and for imposing an ineligibility term above one-third of the sentence imposed or three years, the mandatory minimum required under N.J.S.A. 2C:43-6c. Cf. State v. Yarbough, supra; State v. Martelli, supra.
The sentence of defendant is vacated and the matter is remanded to the trial court for resentencing. In all other respects the judgment of conviction is affirmed.
NOTES
[1] The State Judiciary Committee Statement to Senate No. 738 which became L. 1978, c. 95 of the Code of Criminal Justice deleted the section dealing with negligent homicide on the basis that the concept was too broad and that section was replaced by the current offense of death by auto, N.J.S.A. 2C:11-5.
[2] Defendant argues that under N.J.S.A. 2C:44-1b(12) "cooperation" beyond a guilty plea relating to the particular event or events leading to the sentencing, N.J.S.A. 2C:44-1c(1), is also a mitigating circumstance. We do not necessarily hold that a confession or inculpatory statement involving the defendant himself is or is not "cooperation" within the meaning of N.J.S.A. 2C:44-1b(12).