285 N.J. Super. 337 (1995)
666 A.2d 1372
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
CHRISTOPHER GRAHAM, DEFENDANT-RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1995.
Decided November 14, 1995.
*339 Before Judges DREIER, ARNOLD M. STEIN and CUFF.[1]
Elizabeth Miller-Hall, Assistant Prosecutor, argued the cause for appellant/cross-respondent (Clifford J. Minor, Essex County Prosecutor, attorney; Ms. Miller-Hall of counsel and on the letter brief and reply letter brief).
Jacqueline E. Turner, Assistant Deputy Public Defender, argued the cause for respondent/cross-appellant (Susan L. Reisner, Public Defender, attorney; Ms. Turner, of counsel and on the letter brief).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
Defendant cross-appeals from his conviction of second degree conspiracy, N.J.S.A. 2C:5-2 and 2C:15-1; first degree armed robbery, N.J.S.A. 2C:15-1, third degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b, and second degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a. He was sentenced to a fifteen-year term for the first degree armed robbery and to a concurrent four-year term for the unlawful possession of a weapon. The other convictions were merged for sentencing purposes. The trial judge concluded that he was not satisfied by a preponderance of the evidence that a real handgun was involved in the robbery and therefore did not impose a mandatory minimum Graves Act sentence pursuant to N.J.S.A. 2C:43-6d. The State appeals from this ruling.
*340 Because we reverse and remand for a new trial, we dismiss the State's appeal as moot.
The victim testified during trial that on June 1, 1993, at approximately 1:30 p.m., he cashed a check for $321 at a check cashing facility on 15th Avenue and 18th Street in Newark. He walked to a bus stop and, while waiting for a bus, turned around to face two men, one of whom was pointing a gun at his face. They ordered the victim to "get the f____ on your face, just get down." One of the men said, "Get down on the ground and don't mother f____g move." The man without the gun then searched the victim's pockets as the other man ordered, "[D]on't mother f____g move. If you do, we're going to blow your f____g head off."
While he was lying on the ground, the victim was able to observe the gun and the face of the man without the gun. The victim described the gun being held to his head as a ".45 magnum" approximately ten inches long, black with a brown handle. The victim explained that the gun was a revolver and not an automatic gun and that he was familiar with guns from reading magazines about guns.
The victim testified that he saw defendant's face during the robbery and recognized defendant as someone he had seen around. He identified defendant as the man without the gun who took the $321 from the victim's pockets.
After defendant and his accomplice fled, the victim called a friend who then called the police. The police took the victim to the police station where he gave a report and identified defendant from a number of photographs. Detective Johnson of the Newark Police Department testified that on June 1, 1993, the victim identified a photograph of defendant as one of his attackers. At this time, the victim told the police that he did not know defendant. He also testified before the Grand Jury that he did not know either of the men who robbed him.
At trial, the victim testified for the first time that he had seen defendant "around" his high school. On cross-examination, the *341 victim was confronted with the inconsistency between his pretrial declarations and his trial testimony. Defendant's girlfriend, who had known him since childhood, testified that defendant had not attended the high school named by the victim.
During deliberations, the trial judge received a note from the jury containing the following: "Police report, Grand Jury report." There is no record of any discussion by the court, prosecutor and defense counsel, out of the jury's presence, as to the meaning of this note or how the judge should respond to the jury. Such a discussion on the record is necessary whenever there is any confusion as to what the jury really wants.
After receiving the note, the trial judge told the jury:
By this I assume you want the police report and Grand Jury report. The short answer to this is I cannot give that to you. The answer is no.
The judge then explained to the jurors that he could not give them the police report and the Grand Jury "report," because they had not been marked into evidence.
Defense counsel objected:
[DEFENSE COUNSEL]: I don't think it made it clear that the jury could consider what was in those statements. I think you told them they can be considered as substantive evidence what is in those statements.
THE COURT: But it's not admissible. I can't give it at this time.
[DEFENSE COUNSEL]: I'm not asking that they be given to them but I think it's not clear 
THE COURT: What are you asking?
[DEFENSE COUNSEL]: I think it's not clear if they had a real question of what was in those reports, they were testified to and there was testimony with respect to those documents or if there was a question they can have it read back.
THE COURT: They didn't ask for anything read back. It says police report, Grand Jury report. Your exceptions are noted.
Defense counsel's objection was well taken. We are unable to tell what the jury wanted from its cryptic request. We cannot tell if the judge correctly concluded that the jury wanted to see the actual police report and Grand Jury testimony, and therefore correctly instructed the jurors that they were not entitled to see these documents. State v. Woodard, 102 N.J. Super. 419, 427, 246 A.2d 130 (App.Div.), certif. denied, 53 N.J. 64, 247 A.2d 887 (1968), *342 cert. denied, 395 U.S. 938, 89 S.Ct. 2004, 23 L.Ed.2d 453 (1969). Nor can we determine if the jury simply wanted that part of the victim's cross-examination read back in which he admitted to the inconsistencies between his trial testimony and his pretrial declarations. There might even have been a different reason, not divined by us, why the jury sent its ambiguous message.
"When a jury requests clarification, the trial judge is obligated to clear the confusion." State v. Conway, 193 N.J. Super. 133, 157, 472 A.2d 588 (App.Div.), certif. denied, 97 N.J. 650, 483 A.2d 174 (1984). So, too, when the jury's question is ambiguous, the judge is obliged to clear the confusion by asking the jury the meaning of its request.
A question from a jury during its deliberations means the one or more jurors need help and that the matter is of sufficient importance that the jury is unable to continue its deliberations until the judge furnishes that help. An appropriate judicial response requires the judge to read the question with care to determine precisely what help is needed.

State v. Parsons, 270 N.J. Super. 213, 221, 636 A.2d 1077 (App.Div. 1994).
The victim's inconsistent testimony put his identification of defendant in sharp dispute. This most likely prompted the jury to send its message to the judge during deliberations. The trial judge should not have assumed the jury's meaning. Moreover, when the judge told the jury that it could not see the documents, the jurors might have concluded they were precluded from considering the victim's cross-examination testimony about his prior statements in the police report and before the Grand Jury.
Reversed and remanded for a new trial. The State's appeal is dismissed as moot.
NOTES
[1] Judge Cuff did not participate in oral argument. However, the parties consent to her participation in the decision.