741 A.2d 114 (1999)
326 N.J. Super. 252
STATE of New Jersey, Plaintiff-Respondent,
v.
David R. WHITTAKER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1999.
Decided December 6, 1999.
*115 John T. Mullaney, Jr., Tinton Falls, for defendant-appellant.
Catherine A. Foddai, Deputy Attorney General, for plaintiff-respondent (John J. Farmer, Jr., Attorney General, attorney; Ms. Foddai, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and ARNOLD.
The opinion of the court was delivered by ARNOLD, J.S.C. (temporarily assigned).
Defendant David R. Whittaker appeals from convictions for various offenses including possession of a firearm, a revolver, with the purpose to use it unlawfully against Livey Sloan. We reverse the conviction for that offense because under the factual circumstances and the jury instructions defendant's acquittal of aggravated assault upon Livey Sloan with a firearm, the same revolver, bars the conviction. The judgment of conviction is affirmed as to all other crimes of which defendant was found guilty, and we remand for sentencing.
Defendant was charged with possession of a weapon, a machete, with the purpose to use it unlawfully against his son, Van Whittaker, N.J.S.A. 2C:39-4d (count one); aggravated assault with the machete upon Van Whittaker, N.J.S.A. 2C:12-1b(2) *116 (count two); making terroristic threats to Van Whittaker, N.J.S.A. 2C:12-3a and/or b (count three); possession of a firearm, a revolver, with the purpose to use it unlawfully against Van Whittaker, 2C:39-4a (count four); aggravated assault by pointing a firearm at Van Whittaker, N.J.S.A. 2C:12-1b(4) (count five); possession of the revolver with the purpose to use it unlawfully against Livey Sloan, N.J.S.A. 2C:39-4a (count six); aggravated assault upon Livey Sloan with the revolver, N.J.S.A. 2C:12-1b(2) (count seven); aggravated assault by pointing a firearm at Livey Sloan, N.J.S.A. 2C:12-1b(4) (count eight); making terroristic threats to Livey Sloan, N.J.S.A. 2C:12-3a and/or b (count nine); making terroristic threats to Sharon Whittaker, N.J.S.A. 2C:12-3a and/or b (count ten); making terroristic threats to Valerie Whittaker, N.J.S.A. 2C:12-3a and/or b (count eleven); aggravated assault by pointing a firearm at Sharon Whittaker, N.J.S.A. 2C:12-1b(4) (count twelve); and aggravated assault by pointing a firearm at Valerie Whittaker, N.J.S.A. 2C:12-1b(4) (count thirteen).
Defendant was found guilty of unlawful possession of a machete as a lesser included offense of possession of the machete for an unlawful purpose (count one); terroristic threats (counts three and nine); possession of the revolver with the purpose to use it unlawfully against Livey Sloan (count six); and aggravated assault with the machete upon Van Whittaker (count two). Significantly, although charged in count seven with aggravated assault with the revolver upon Livey Sloan, the jury expressly found defendant guilty of aggravated assault with a machete upon Livey Sloan. Defendant was found not guilty on the remaining charges. Thus although defendant was found guilty of possession of the revolver with the purpose to use it unlawfully against Livey Sloan, he was found not guilty of aggravated assault upon Livey Sloan with that same weapon.
Possession of a firearm with the purpose to use it unlawfully against another is a Graves Act Offense N.J.S.A. 2C:43-6c. Thus, on count six, defendant was sentenced to six years imprisonment with a three-year period of parole ineligibility. On each of counts two, three, seven and nine, defendant was sentenced to three-year terms and on count one the court imposed nine-months imprisonment. These sentences were made concurrent to each other and to the sentence imposed on count six.
Defendant raises the following points on appeal:
POINT I
THE TRIAL COURT ERRED IN PERMITTING THE DOMESTIC VIOLENCE COMPLAINT TO BE INTRODUCED INTO EVIDENCE SINCE THE PROCEDURE UTILIZED TO OBTAIN THE RESTRAINING ORDER WAS ILLEGAL AND PREJUDICED THE DEFENDANT AND HIS WITNESSES BEFORE THE JURY.
POINT II
THE TRIAL COURT ERRED IN CHARGING THE JURY IN A RECHARGE ON THE CONCEPT OF SIMPLE POSSESSION WHICH WAS NOT PART OF THE ORIGINAL CHARGE.
POINT III
THE EVIDENCE OF TRIAL WAS INSUFFICIENT TO SUPPORT A VERDICT OF GUILTY OF POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE.
POINT IV
THE VERDICT OF POSSESSION OF A HAND GUN FOR AN UNLAWFUL PURPOSE MUST BE REVERSED AS A MATTER OF LAW.
POINT V
THE TRIAL COURT ERRED IN DETERMINING THAT THE POLICE *117 INTERROGATIONS OF THE WITNESSES CONSTITUTED EXCITED UTTERANCES PURSUANT TO RULE 803(c)(2).
POINT VI
THE TRIAL COURT ERRED IN REFUSING TO UTILIZE THE "ESCAPE VALVE" MECHANISM OF THE GRAVES ACT SENTENCING PROVISION WHEN INITIALLY REQUESTED OR IN THE ALTERNATIVE BY REFUSING TO REFER THE MATTER POST VERDICT TO ASSIGNMENT JUDGE PURSUANT TO NJS 2C:43-6.1
Briefly, the material facts are as follows: Defendant, an army officer, lived in Tinton Falls with his wife Sharon; his son Van, age 19; his daughter Valerie, age 17; and a house guest, Livey Sloan, age 20. Livey and Van shared a room on the second floor. Defendant had established a 10 p.m. curfew and permitted no use of the telephone after that time. On December 23, 1995, Livey Sloan arrived home at about 10 p.m. Defendant, Valerie and Sharon were already home; but Van did not come home until midnight. When Van arrived home, defendant was in the basement using a machete to regrip his golf clubs. Van went downstairs to talk to him. Livey was in his room but could hear defendant and Van arguing about tattoos that Van had gotten since his graduation from high school. Defendant ordered Van to find another place to live. The argument escalated and it is undisputed that defendant picked up a machete and cut the telephone line in the basement and gashed a hole in the heating duct work.
Van ran upstairs chased by defendant, who was still carrying the machete. When Livey heard the two, he looked out of the doorway of his bedroom and saw Van stepping back as defendant, yelling, walked toward him. Defendant chased Van into the dining room and cut the ceiling fan with the machete. Van then fled from the house. Meanwhile, Livey was still in his bedroom and was afraid that the defendant would attack him. He tried to contact the police with a cellular telephone but was unable to do so since he heard defendant coming up the stairs. Livey testified that he threw the cellular phone under the bed so that defendant would not know that he had been trying to call the police. Livey then heard defendant ask him what he was doing. When Livey turned around, he was hit above the right eye. Livey testified that he was hit by "something bright" which caused him to fall to the ground. He testified that while lying on the ground he looked up and saw defendant standing above him with a gun in his hand.
Valerie testified that she saw defendant walk upstairs to the bedroom carrying a machete and heard an argument between defendant and Livey during which defendant told Livey to get off the telephone. She testified that she then heard a crack and when she went upstairs she saw Livey with a small cut near his eye. At that time, the police arrived at the front door.
Livey testified that after the police arrived, he saw defendant go into defendant's room. According to Livey, defendant still had the gun when defendant entered his bedroom, but when defendant emerged from the room he did not have the gun. As already noted, the jury convicted defendant of possession of a revolver with the purpose to use it unlawfully against Livey Sloan but acquitted defendant of aggravated assault with a revolver upon Livey Sloan. Rather, the jury found him guilty of an offense which was not charged, aggravated assault with a machete upon Livey Sloan.
Preliminarily, we note that defendant was convicted of aggravated assault with a machete upon Livey Sloan although he was charged with aggravated assault upon Livey Sloan with a firearm. The former charge was presented to the jury as a lesser-included offense of the latter and the jury was instructed to consider the *118 former only if it found the defendant not guilty of the latter.
First, we point out that aggravated assault with a machete is not a lesser-included offense of aggravated assault with a firearm because the former cannot be established by proof of the same or less than all of the facts required to prove the latter. State v. Garretson, 313 N.J.Super. 348, 354, 712 A.2d 1226 (App.Div.), certif. denied, 156 N.J. 428, 719 A.2d 1026 (1998). Aggravated assault with a machete is the same offense as aggravated assault with a firearm because the elements of both are the same and only the instrumentality utilized to commit the crime is different. See State v. Lopez, 276 N.J.Super. 296, 647 A.2d 1351 (App.Div.), certif. denied, 139 N.J. 289, 654 A.2d 469 (1994) (allowing the jury to determine whether armed robbery was committed with knife or gun, even though indictment charged only commission of crime with machine gun, was not error). So, while as a general rule, a criminal defendant may not be convicted of a criminal offense not charged in the indictment, see State v. Dixon, 125 N.J. 223, 257, 593 A.2d 266 (1991); State v. Passafiume, 184 N.J.Super. 447, 446 A.2d 549 (App.Div.), certif. denied, 91 N.J. 280, 450 A.2d 589 (1982), that rule is not applicable to this case because the elements of both offenses are essentially the same. Furthermore, in this case, defense counsel requested the court to charge the jury on aggravated assault with a machete upon Livey Sloan. Accordingly, there was no error in instructing the jury on aggravated assault with a machete on Livey Sloan.
However, while defendant's conviction of count seven which charged aggravated assault upon Livey Sloan with a machetenot with a revolver as charged is therefore sustainable, his conviction of possessing a firearm with the purpose of using it unlawfully against Livey Sloan, as charged in count six is not since he was acquitted of aggravated assault upon Livey Sloan with that firearm. In instructing the jury on count six, the trial court identified the unlawful purpose as the assault on Livey Sloan with a handgun. This was the only purpose the jury was instructed to consider on count six, and it was the identical purpose they were instructed to consider when deliberating on the aggravated assault charge on count seven. Furthermore, the period of time defendant allegedly possessed the weapon was very short, and there was no evidence of a broader purpose than the purpose to use it against Livey Sloan since Livey testified that he did not again see the gun after defendant emerged from his bedroom. Accordingly, defendant's conviction on count six must be reversed. As we said in State v. Turner, 310 N.J.Super. 423, 434, 708 A.2d 1205 (App.Div.1998):
Here the trial judge gave the identical instruction as to purpose when charging the jury on the substantive offense of assault as he did for the possessory offense. Under that circumstance, the rule of State v. Jenkins, supra, 234 N.J.Super. [311] at 315, 560 A.2d 1240 [(1989)] applies because "acquittal of the accompanying charge erase[d] the identification of ... [defendant's] unlawful purpose" in possessing the gun that ... [defendant] pointed at ... [victim]. Accordingly, we conclude that the conviction of ... [defendant] of possession of a weapon for an unlawful purpose must be reversed.
This principle applies to the facts here.
We also are constrained to note that the jury may have been confused or misled as to the elements of possession of a weapon with the purpose to use it unlawfully against another in contradiction to a simple possessory crime. The trial court had instructed the jury on possession with the purpose to use it unlawfully by reading the Model Jury Charge on that crime. Because the second element of that offense is possession, the Model Jury Charge instructs the trial judge to follow the Model Jury Charge on possession.
*119 The trial judge, however, did not define the meaning of the term possession for the jury.
During the course of its deliberations, the jury sent a note to the court which read as follows:
Clarify:
possession of ...
1. Possession? Elements unlawful possession.
2. Elements of knowingly purposely

elements
3. Clarify law of "threats"
Defendant contends that the trial court did not show the jury's note to the prosecutor or defense counsel before responding to the note.[1] The record only shows that the trial court responded to the note as follows:
THE COURT:
All right. Madam Forelady, you have sent to me questions: "Clarify possession." By that you want the definition of what possession is, is that what that is?
THE FOREPERSON:
Yes.
THE COURT:
Okay. You also want me to redefine to you the phrases "purposely and knowingly." And you also want me to, you say, "Clarify elements of law regarding threats." I assume you want me to recharge you the two types of terroristic threats. All right. Addressing your first question, if you remember, the defendant is charged with possession of a weapon for an unlawful purpose as far as the machete is concerned and as far as the firearm is concerned. Now, you've asked me what possession means.
The trial judge then, for the first time, charged the jury as follows:
The word possess, as used in criminal statutes, signifies a knowing intentional control over a designated thing accompanied by knowledge of its character. Thus, a person must know or be aware that he possesses the item in question and he must know what it is that he possesses. A person may possess an item even though it is not physically on his person at the time of his arrest if he had, in fact, at some time prior to his arrest had control and dominion over it.
When we speak of possession we mean a conscious knowing possession. And the law recognizes two kinds of possession, they are actual possession and constructive possession.
A person is in actual possession of a particular article or thing when he knows what it is, that is, he has knowledge of its character and knowingly has it on his person at a given time. The *120 law recognizes that possession may be constructive instead of actual.
Constructive possession means possession in which the person does not physically have the property, but though not physically on one's person, he is aware of the presence of the property and is able to exercise intentional control or dominion over it.
A person who, although not in actual possession, has knowledge of its character and knowingly has both the power and the intention at a given time to exercise control over a thing, either directly or through another person, is then in constructive possession of it. That's the definition of possession.
The jury, although now properly instructed on possession, was not re-instructed on possession of a firearm with a purpose to use it unlawfully against the person of another.
Certainly counsel must be consulted before the trial court responds to a question from the jury. State v. Graham, 285 N.J.Super. 337, 666 A.2d 1372 (App. Div.1995). Whether that was done in this case is in dispute. See note 1 infra. However, we need not dwell on that issue, because the note was ambiguous and the trial judge should not have assumed the meaning of the jury's questions, but should have instructed the jury to clarify those questions. Graham, supra, 285 N.J.Super. at 342, 666 A.2d 1372. We recognize that the trial judge did ask the foreperson if the jury wanted the definition of the word possession clarified but the jury's note was sufficiently ambiguous to require further clarification. In our view, the jury apparently sought clarification of the law relating to possession of a firearm with a purpose to use it unlawfully against the person of another but was reinstructed only as to the single element of possession, a fact not really in dispute. This, we believe, may have contributed to the jury finding defendant guilty on the firearm-possession charge of count six but not guilty of aggravated assault upon Livey Sloan with that weapon as charged in count seven. We are thus constrained to reverse defendant's conviction on count six based on the alternate ground of the inadequate response to the jury's note.
Defendant also argues that statements allegedly made by his wife Sharon Whittaker in applying for a domestic violence restraining order during the events of that night were improperly admitted at trial. We disagree but are constrained to comment on the lack of compliance with R. 5:7A.
The subject of the restraining order arose after defendant's wife Sharon testified for the defense. Her testimony regarding the gun was as follows:
Q. During the night in question, did your husband point a loaded gun at you?
A. No, sir.
Q. Did he threaten to kill?
A. No, sir.
Q. Did he take any action against you?
A. No, sir.
Q. Did you see him threaten to kill any other members of your family?
A. No, sir.
Q. Or threaten to kill Livey Sloan?
A. No, sir.
Q. Did he point a gun at any of them?
A. No, sir.
On cross-examination, Sharon Whittaker admitted signing a Domestic Violence Rights Form, and read into evidence a domestic violence complaint against her husband which had boxes checked off listing assault, terroristic threats and criminal mischief. She also read aloud the complaint which alleged "brandishing a loaded handgun and machete, by assaulting son Van Whittaker with the machete and pointing handgun on him, by pistol whipping Livey Sloan in the head and menacing Valerie Whittaker." The police officer who assisted Sharon Whittaker testified in *121 rebuttal that Sharon swore that the allegations contained in the complaint were true.
We hold that this cross-examination and rebuttal testimony were properly admitted as a prior inconsistent statement under N.J.R.E. 803(a)(1). State v. Gross, 216 N.J.Super. 98, 523 A.2d 215 (App.Div. 1987), aff'd, 121 N.J. 1, 577 A.2d 806 (1990). Nevertheless, we note that the procedures employed by the municipal court judge did not comply with R. 5:7A. Sharon Whittaker testified that she never spoke to the municipal court judge. The police officer who assisted her testified that the municipal court judge did not speak to her, never administered an oath to her, and took no testimony from her. The police officer further testified that the municipal court judge never talks to the applicant for a restraining order. These are serious violations of R. 5:7A and should not occur in the future.
Defendant also contends that the trial court erred in admitting statements made by Sharon, Valerie, Van and Livey to the police shortly after they arrived at the defendant's home. We disagree. The court held a N.J.R.E. 104 hearing on this issue. We agree with the trial court's decision admitting these statements as excited utterances pursuant to N.J.R.E. 803(c)(2).
The conviction on count six, possession of a firearm with the purpose of using it unlawfully is reversed. Defendant is entitled to an acquittal on that count for the reasons we have stated. We remand to the trial court for entry of an amended judgment of conviction and for resentencing on the remaining counts on which defendant was found guilty. In all other respects the judgment of conviction is affirmed.
NOTES
[1] There is no indication in the record of any such consultation or disclosure of the note. Following oral argument, at the court's request, the Deputy Attorney General wrote to the court advising that the Assistant Prosecutor who had tried the case informed her "that both attorneys were shown the note by the trial court at sidebar and the trial judge discussed with them his proposed response." In response, defendant's attorney, who tried the case wrote to the court as follows:

This is in response to the October 19 correspondence of the Deputy Attorney General concerning the above-captioned appeal.
Notwithstanding the contents of her letter as it applies to her discussion with the Assistant Prosecutor who tried the case, the recollection of the Assistant Prosecutor is inaccurate. I have discussed this issue at length with my client and other witnesses who sat through the jury deliberations, and their recollection is exactly what is borne out by the transcript which is attached hereto. As the Court can see, all parties were assembled in the Court Room, and the jury was addressed without any sidebar discussions whatsoever.
All throughout this trial, all sidebar conferences and dialogue were recorded by the Court Reporter, and this one was not simply because it did not occur. The first time I ever saw the jury note was when it was attached to the Prosecutor's response to the post verdict motions that I filed on behalf of the defendant.