809 A.2d 825

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. N.A., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 10, 2002—Decided November 18, 2002.

144

Before Judges SKILLMAN, CUFF and WINKELSTEIN.

*Peter A. Garcia*, Acting Public Defender, attorney for appellant (*Kevin G. Byrnes*, Designated Counsel, of counsel and on the brief).

*Peter C. Harvey*, Acting Attorney General, attorney for respondent (*Erik W. Daab*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

CUFF, J.A.D.

Following a jury trial, N.A. was convicted of second degree endangering the welfare of a child contrary to *N.J.S.A.* 2C:24–4a. The victim was defendant's two year old son. Defendant was sentenced to a nine-year term of imprisonment. The trial judge

also imposed a $50 VCCB assessment, a $30 LEOTEF penalty, and a $75 SNSF assessment.

In June 1996, defendant and R.M. were living together with their two year old son, K.M., and their one year old daughter, B.M. On June 18, the two children were in the playpen, while R.M. was on the couch watching television and defendant was sleeping in the next room. R.M. fell asleep and awoke to hear defendant screaming at their son. Defendant then grabbed the child and threw him on the floor. Defendant picked him up and hit him on the legs, buttocks, back and head. She slapped and punched the child fifteen to twenty times. Then, she took the boy into the bedroom and hit the boy five to ten times on his buttocks with a hairbrush.

R.M. followed defendant to the doorway of the bedroom. He saw the hairbrush in defendant's hand and saw her hit his son. When defendant saw R.M., she stopped hitting the child. R.M. returned to the living room and defendant brought the child with her into the room. When she started to hit the child once again, R.M. grabbed the boy and took him to a neighbor's house.

When R.M. arrived at the neighbor's house, he called his sister. After a half hour, R.M. returned to his apartment and started to pack some clothes. When his sister arrived, R.M. left with his son and took him to a second sister's apartment. There, his sisters videotaped the child. A case worker from the Division of Youth and Family Services also arrived at the apartment and interviewed K.M.

A friend of defendant's, who frequently watched the child, responded with R.M.'s sister to his call for assistance. When the friend arrived at the couple's apartment, she picked up the child and noticed bumps on the child's head and marks on his face, arms, buttocks and legs. Defendant's neighbor also testified that she observed two or three bruises on the boy's legs when R.M. brought the boy to her house. She also testified that R.M. pulled down the child's pants and showed her his buttocks which were bright red.

The following day, defendant used her neighbor's telephone to call her father. The neighbor overheard defendant's side of the conversation and reported that defendant told her father that "she had just beat the shit out of [K.M.]" because he went into her purse and was playing with her makeup. Defendant related that she was afraid he would harm himself. The neighbor further stated that defendant acknowledged to her father that she needed help and that her son did not deserve the beating. Yet, after she completed the call, defendant told her neighbor that R.M. had beaten the child.

Defendant's father confirmed that his daughter called him on June 19. He stated that she was "very hysterical, crying, and said her son had gotten into her ... pocketbook." Defendant told her father that "she became upset and smacked him with a hairbrush."

Defendant testified at trial. She denied hitting her son but admitted that she chastised him for playing with her pocketbook and its contents. According to defendant, she placed the child in a corner but he threw himself on the ground. She admitted to spanking him one or two times on the hand but denied hitting him with a hairbrush. She attributed the bruises on the child's back, legs and buttocks to blows administered by R.M. She accused R.M. not only of beating the child but also overreacting to her punishment of the child. She further testified that she told R.M. to leave the apartment and that she called the police to report R.M.'s beating of the child. She also denied that she told her father that she hit the child with a hairbrush. According to defendant, she told her father that she was being accused of hitting the child with the brush.

On appeal, defendant raises the following arguments:

POINT I

THE DEFENDANT'S PRIVILEGE AGAINST SELF-INCRIMINATION AS GUARANTEED BY THE FIFTH AMENDMENT TO THE *UNITED STATES CONSTITUTION* AND THE *NEW JERSEY COMMON LAW* AND THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARAN-TEED BY THE FOURTEENTH AMENDMENT TO THE *UNITED STATES CONSTITUTION* AND ART. I PAR. 1 OF THE *NEW JERSEY CONSTITU-*

*TION* WERE VIOLATED BY THE ERRONEOUS AND PREJUDICIAL INSTRUCTION ON PRIOR INCONSISTENT STATEMENTS THAT PERMITTED THE JURORS TO CONSIDER THE DEFENDANT'S PRIOR OMISSIONS AND FAILURES TO DISCLOSE AS SUBSTANTIVE EVIDENCE AND IMPEACHMENT EVIDENCE AGAINST THE DEFENDANT.

(Not Raised Below).

POINT II

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE *UNITED STATES CONSTITUTION* AND ART. I PAR. 1 OF THE *NEW JERSEY CONSTITUTION* WAS VIOLATED BY THE TRIAL COURT'S CONFUSING AND CONTRADICTORY INSTRUCTION ON THE LAW OF ENDANGERING THE WELFARE OF A CHILD.

(Not Raised Below).

POINT III

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE *UNITED STATES CONSTITUTION* AND ART. I PAR. 1 OF THE *NEW JERSEY CONSTITUTION* WAS VIOLATED BY THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE LAW OF CAUSATION EVEN THOUGH CAUSATION WAS A MATERIAL ISSUE IN THE CASE.

(Not Raised Below).

POINT IV

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE *UNITED STATES CONSTITUTION* AND ART. I PAR. 1 OF THE *NEW JERSEY CONSTITUTION* WAS VIOLATED BY THE JURY'S CONSIDERATION OF OTHER–CRIME EVIDENCE OF DRUG OFFENSES.

(Not Raised Below).

POINT V

THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE *UNITED STATES CONSTITUTION* AND ART. I PAR. 1 OF THE *NEW JERSEY CONSTITUTION* WAS VIOLATED BY THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE LESSER–INCLUDED OFFENSE RATIONALLY SUPPORTED BY THE EVIDENCE.

(Not Raised Below).

POINT VI

THE DEFENDANT'S SENTENCE IS EXCESSIVE: THE TRIAL COURT ERRED BY IMPROPERLY BALANCING THE AGGRAVATING AND MITI-GATING FACTORS.

We reject each of these arguments.

■ The trial judge instructed the jury that it could consider a witness's failure to disclose information at a previous time in its evaluation of a witness's credibility. He also told the jury that it could consider the same omission as substantive evidence. Defendant argues that this instruction violated her federal and state constitutional rights to post-arrest silence. No objection was lodged at trial to this instruction; therefore, we must apply the plain error standard. *R.* 2:10–2; *State v. Macon,* 57 *N.J.* 325, 333, 273 *A.*2d 1 (1971).

At trial, defendant testified that R.M. was responsible for the numerous bruises on her son. She testified that she did not beat her son with a hairbrush on June 18. She admitted that she hit the child on the hand once or twice and inadvertently scratched his arm as she tried to place the boy in the corner. She also testified that she called the local police after R.M. left their apartment with their son but when the police arrived, defendant did not tell the responding officer that R.M. had hit her son.

Defendant's telephone call to the police pre-dated her arrest by several days and was initiated by her. She did not decline to talk about her son's condition but simply informed the police that she had an argument with R.M. and he had left the apartment. We fail to see how confronting her with a pre-arrest statement which omitted her trial accusation against the child's father compromised her right to post-arrest silence.

The trial court's instruction that the prior inconsistent statement could be used as substantive evidence may have been somewhat confusing because it is difficult to understand how any prior inconsistent statement by defendant could have been used as substantive evidence. This may explain the failure of counsel to object to the jury instruction. Certainly, our review of the record reveals no prejudice to the defendant. The State's evidence was

strong. Two witnesses expressly refuted defendant's recollection of a phone call to defendant's father. Both witnesses testified that defendant admitted that she had beaten the child with a hairbrush. Thus, any error did not contribute to an unjust result.

■ Defendant argues that the jury should have been instructed on the issue of causation because causation was a material issue in the case. No exception to the charge was made at trial concerning the omission of a causation instruction. Therefore, we review this alleged error according to the plain error standard. *R.* 2:10–2; *Macon, supra*, 57 *N.J.* at 333, 273 *A.*2d 1.

■ If causation is disputed, a jury instruction on causation is required, even in the absence of a request. *State v. Martin*, 119 *N.J.* 2, 16, 573 *A.*2d 1359 (1990). Here, however, the issue was not what factor, event or conduct caused the injuries to the child but who hit the child. Furthermore, a parent endangers the welfare of a child if she causes "the child harm that would make the child an abused or neglected child as defined in [*N.J.S.A.* 9:6–1, *N.J.S.A.* 9:6–3 and *N.J.S.A.* 9:6–8.21]." *N.J.S.A.* 2C:24–4a. *N.J.S.A.* 9:6–8.21, which is incorporated by reference in *N.J.S.A.* 2C:24–4a, provides in relevant part:

> c. "Abused or neglected child" means a child less than 18 years of age whose parent or guardian, as herein defined, (1) inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes *or creates a substantial risk* of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ; ... (4) or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, ... to exercise a minimum degree of care ... (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, *or substantial risk thereof*, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court.... [emphasis supplied.]

This language, particularly the language which encompasses placing the child in a zone of danger, does not require that any act or omission of the parent result in specific harm to the child. The focus is on the conduct of the parent which exposes the child to a

"substantial risk" of death or physical harm. Therefore, a causation instruction would not be appropriate in this case.

■ Defendant was charged with endangering the welfare of a child contrary to *N.J.S.A.* 2C:24-4a. On appeal, she argues that the trial judge erred because he failed to charge the lesser included offense of cruelty and neglect of a child codified at *N.J.S.A.* 9:6-3. This issue also comes before us as plain error. *R.* 2:10-2. Therefore, we must determine if any error had the capacity to produce an unjust result. *Macon, supra,* 57 *N.J.* at 333, 273 *A.*2d 1.

As discussed, a person, such as defendant, having a legal duty for the care of a child is guilty of the offense of endangering the welfare of a child if she "causes the child harm that would make the child an abused or neglected child" as defined in Title 9. *N.J.S.A.* 2C:24-4a. Due to the special relationship and obligation to the child by a parent, the prohibited conduct is a second degree offense. *Ibid.* The Legislature has also declared that the same conduct is a fourth degree offense. *N.J.S.A.* 9:6-3 provides in pertinent part:

> Any parent, guardian or person having the care, custody or control of any child, who shall abuse, abandon, be cruel to or neglectful of such child, or any person who shall abuse, be cruel to or neglectful of any child shall be deemed to be guilty of a crime of the fourth degree.

This section makes no distinction for the relationship of the actor to the child.

Upon request of a defendant, the trial judge shall charge the jury with respect to an included offense if there is a rational basis for a jury to convict the defendant of the included offense. *N.J.S.A.* 2C:1-8e; *State v. Brent,* 137 *N.J.* 107, 113-14, 644 *A.*2d 583 (1994). The Criminal Code defines an included offense as follows:

> A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense. An offense is so included when:
>
> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or

(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

[*N.J.S.A.* 2C:1–8d.]

Here, subsections (2) and (3) are not implicated. The Title 9 offense does not target and defendant's actions could not be considered an attempt or conspiracy to commit the offense charged. Furthermore, the Title 9 offense does not differ from the second degree offense because of a less serious injury or risk of injury to the child. Moreover, the same "knowing" culpability applies to each offense. *State v. Demarest,* 252 *N.J.Super.* 323, 333, 599 *A.*2d 937 (App.Div.1991).

██  Whether an offense is an included offense according to subsection (1) focuses on the facts not the elements of the offense. *State v. Doss,* 310 *N.J.Super.* 450, 453–55, 708 *A.*2d 1219 (App. Div.), *certif. denied,* 155 *N.J.* 589, 715 *A.*2d 992 (1998). *State v. Whittaker,* 326 *N.J.Super.* 252, 741 *A.*2d 114 (App.Div.1999), illustrates this principle. In *Whittaker,* defendant was charged with aggravated assault with a handgun; he requested a charge of aggravated assault with a machete. *Id.* at 259, 741 A.2d 114. We held that the trial court properly charged both offenses even though aggravated assault with a machete was the same rather than a different offense. *Ibid.* We reasoned the alternative charge was appropriate because the record supported a finding that defendant utilized a machete rather than a handgun and the instrumentality used in the attack had significant sentencing ramifications. If defendant had been convicted of aggravated assault with a handgun, he would have been subject to a Graves Act three-year parole ineligibility term. *Id.* at 256, 741 A.2d 114. Under this reasoning, however, the alternate charge would not have been required if the instrumentality used in the offense was different than as charged but did not trigger a more onerous sentence. The reasoning in *Whittaker* also does not address the situation in which the offenses are the same and no finding by the

jury can distinguish defendant's actions as a second degree or fourth degree offense.

It is apparent that the Title 2C offense of endangering the welfare of children and the Title 9 offense of cruelty and neglect of children are the same offenses. The only difference is the degree of the offense and the penalty. Each offense criminalizes the same harm or risk of harm to the child. Each offense requires the same proof of "knowing culpability." *Demarest, supra,* 252 *N.J.Super.* at 333, 599 *A.2d* 937. Each offense also encompasses conduct by a parent. An instruction to the jury on each offense would be the same. Furthermore, unlike *Whittaker,* the jury cannot make a finding, such as the instrumentality used in an attack, that will affect the gradation of the offense.

The conclusion that the offenses are identical is supported by the legislative history of Title 2C. The 1971 Commentary to what became the Criminal Code, specifically the section which was later codified as *N.J.S.A.* 2C:24-4, states "[t]his Section incorporates into the Code the existing law as to abuse, abandonment, cruelty and neglect of children by making such conduct criminal under the definitions of those terms in Title 9. The intent is to incorporate the crime now defined in *N.J.S.[A.]* 9:6-3 without substantial change except for the penalty provisions." *Final Report of the New Jersey Criminal Law Revision Commission,* Vol. II at 259 (1971). Although one commentator opines that *N.J.S.A.* 9:6-3 has been superseded, it has not been repealed. Cannel, *New Jersey Criminal Code Annotated,* comment 3 on *N.J.S.A.* 2C:24-4 (2002). Indeed, amendments to both statutes in the intervening years evince a legislative intent that both statutes are to be preserved perhaps to provide prosecutors the option of charging a lesser offense under appropriate circumstances. *See State v. D.V.,* 348 *N.J.Super.* 107, 114–16, 791 *A.2d* 304 (App.Div.) (recognizing the inherent discretion of the prosecutor to select between a crime of the second degree and a crime of the fourth degree), *certif. granted,* 174 *N.J.* 39, 803 *A.2d* 634 (2002).

■ Under these unique circumstances, we conclude that the Title 9 offense should not have been charged as a lesser included offense. Submission of both offenses would involve the jury in the act of imposition of sentence. Except for capital cases and those offenses in which the jury must make a specific finding to invoke an enhanced sentencing scheme, such as the Graves Act, a jury's consideration of the evidence is confined to what, if any, offenses have been committed by the defendant rather than the penalty which may or must be imposed. *State v. Carswell,* 303 *N.J.Super.* 462, 476–77, 697 *A.*2d 171 (App.Div.1997); *State v. Reed,* 211 *N.J.Super.* 177, 184, 511 *A.*2d 680 (App.Div.1986), *certif. denied,* 110 *N.J.* 508, 541 *A.*2d 1368 (1988). The rationale for this limitation is that sentencing information fails to help the jury in deciding the issue of guilt, distracts the jury by confusing the issues to be decided, and invites a compromise verdict. *Reed, supra,* 211 *N.J.Super.* at 185, 511 *A.*2d 680. Submission of both offenses would transform the traditional function of the jury, a consequence which should not occur lightly. Rather, we elect to defer to the discretion reposed in the prosecutor regarding the nature and extent of the charges to be presented to the Grand Jury. Given our conclusion that the Title 9 offense is not an included offense, we find no error, much less plain error, in the failure of the trial judge to also charge the Title 9 offense.

Defendant also contends that a gratuitous non-responsive comment by R.M. during his cross-examination about drug use by defendant injected other-crime evidence and deprived her of a fair trial. This contention is clearly without merit and does not require discussion in a written opinion. *R.* 2:11–3(e)(2).

■ Defendant further argues that the nine-year term of imprisonment is excessive. This contention is also without merit. When sentenced, defendant had a criminal record including four other indictable convictions and numerous municipal convictions. She had been afforded probation on several occasions but had been cited for violation of the terms of probation on three occasions. Her criminal record and history of violation of the terms of

probation, her history of poly-substance abuse and sporadic employment fully support the sentencing judge's findings that there is a risk that defendant would commit another crime and that there are no mitigating factors. The imposition of a term beyond the presumptive term of seven years is well-supported by the record. *State v. Roth*, 95 *N.J.* 334, 364–66, 471 *A.*2d 370 (1984).

Affirmed.