725 A.2d 713

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JAMES G. GREDDER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 19, 1999—Decided March 19, 1999.

Before Judges HAVEY, SKILLMAN and PAUL G. LEVY.

*Furman L. Templeton, Jr.* argued the cause for appellant.

*Gary A. Thomas*, Assistant Prosecutor, argued the cause for respondent (*Patricia A. Hurt*, Essex County Prosecutor, attorney; *Mr. Thomas*, of counsel and on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

In this interlocutory appeal, we consider whether a person is entitled to the immunity attendant to compliance with *N.J.S.A.* 2C:35-10c, pursuant to *State v. Patton*, 133 *N.J.* 389, 627 *A.2d* 1112 (1993), when he responds to questions from the police and admits to possession of a controlled dangerous substance(CDS). We conclude that defendant is not entitled to that immunity under the circumstances of this case, because the revelation of the CDS was compelled by a confrontation with the police rather than triggered by defendant's voluntary action.

On October 28, 1996, Officer Steinecke and Investigator Cody of the Amtrak Police were conducting an investigation of drug trafficking by people traveling by railroad from Florida to New York. When the two officers reviewed the daily travel manifest for the Amtrak trip from Fort Lauderdale to Newark, they noticed that defendant, James Gredder, had purchased his ticket, with cash, just fifteen to twenty minutes before departure. The officers also noticed that defendant had listed his telephone with a Miami area code rather than the code for Fort Lauderdale.

Steinecke called the number provided and spoke to a friend of the defendant, Karem. Karem stated that defendant often came to Florida and on those occasions he stayed with Karem. Karem believed defendant was still Florida, thus leading Steinecke to believe that defendant had left hastily.

The officers decided to go to Newark to meet the train. They knew that defendant was in a sleeper compartment in the rear car. Defendant was the only person who exited from that train car, and as he approached the police officers, Cody identified himself, displaying his badge. Defendant agreed to talk to them. He told

the officers that he had been in Florida "a couple of days or a week" visiting a sick uncle, and he did not know if he was going to return. Contrary to what his friend had told the officers, defendant said that he did not travel to Florida "that often."

Cody then informed the defendant that, "we [have] a big problem with drugs being transported on trains," and he asked defendant if they could look in his luggage. According to Cody's report,[1] defendant replied, "Yes, go ahead, but I got some weed in there, but that's all I got." Steinecke asked him to sign a consent form to allow them to search his luggage; defendant read and signed the form. When Steinecke searched the two bags, he found a small amount of marijuana in the first, and in the second, underneath layers of folded clothing, he found two brick-shaped packages, the size of paperback books, wrapped in newspaper and clear plastic tape. Based on his experience, he believed the packages contained CDS, and he asked defendant about them. Defendant replied: "Oh man, I'm fucked," and he began to cry. When the officer repeated the question, defendant said "Its coke [cocaine]." Steinecke opened a corner of one of the packages and observed a white, powdery substance he believed to be cocaine, and he confirmed that belief later by field test.

Defendant was charged by indictment with third-degree possession of a controlled dangerous substance (cocaine), contrary to *N.J.S.A.* 2C:35–10a(1), and first-degree possession with intent to distribute a controlled dangerous substance (cocaine), contrary to *N.J.S.A.* 2C:35–5b(1). He filed a motion to suppress the evidence (i.e., the marijuana and the cocaine) taken from him during the course of the warrantless search, but after an evidentiary hearing, the motion was denied. Thereafter, defendant filed a motion to dismiss the indictment based on transactional immunity for the

---

[1] The report was submitted to the judge hearing the motion to suppress evidence and resubmitted to the judge hearing the motion to dismiss the indictment. Although defendant raised the immunity issue with regard to *N.J.S.A.* 2C:35–10c at the suppression hearing, it was more clearly and definitively argued as the basis for the motion to dismiss the indictment.

first count and use and derivative-use immunity for the second count,[2] pursuant to *N.J.S.A.* 2C:35–10c and *Patton;* that motion was also denied. We granted leave to appeal the denial of the motion to dismiss the indictment.

The pertinent part of *N.J.S.A.* 2C:35–10c states:

> Any person who knowingly obtains or possesses a controlled dangerous substance ... in violation of subsection a. of this section and who fails to voluntarily deliver the substance to the nearest law enforcement officer is guilty of a disorderly persons offense.

In *Patton,* the Court reconciled the purpose of that statute with the privilege against self-incrimination. To accomplish that, it held that *N.J.S.A.* 2C:35–10c provides "transactional immunity for section 10 offenses to persons complying with its provisions, and use and derivative-use immunity in respect to other offenses." 133 *N.J.* at 401–02, 627 *A.*2d 1112. The crux of that decision, however, was not concerned with whether the defendant "voluntarily delivered" the CDS to the police.[3] Thus, we take up where *Patton* left off, and consider the application of the phrase "voluntarily delivered."

Defendant argues that "voluntarily delivered" should be construed to include the common situation where a person, not in custody, is being questioned by the police, and during the course of the interrogation admits to possession of marijuana and indicates where that marijuana is. The State argues that "voluntary" should be construed to include only those situations where a person is not already being investigated by the police and decides, in the absence of the pressures inherent in questioning or investigation, to take the CDS to the police.

---

[2] Transactional immunity affords a witness "absolute immunity from future prosecution for the offense to which the testimony relates." *Patton, supra,* 133 *N.J.* at 399, 627 *A.*2d 1112. Use and derivative-use immunity proscribes the use of "compelled testimony or of any information directly or indirectly derived from that testimony" in any criminal case. *Id.* at 400, 627 *A.*2d 1112.

[3] In *Patton,* the defendant did not voluntarily deliver the cocaine he had hidden in a five-dollar bill, but instead dropped it to the floor in the hope it would not be detected. *Id.* at 392, 627 *A.*2d 1112.

"Voluntary" has been aptly defined to mean "[d]ecided or accomplished by personal choice or impulse; not required, coerced, or prompted by another person or thing." *Black's Law Dictionary* 657 (Pocket Edition 1996). The impetus for surrendering the CDS should come from the possessor, and capitulation to the requests of the police does not amount to a voluntary delivery under the statute. The earlier denial of the suppression motion was based on defendant's voluntary consent to the search after being confronted and questioned by the police, and not any alleged voluntary delivery of the drugs. The consent constituted a waiver of any related fourth amendment search and seizure rights, and it was the consent that validated the warrantless search and supported the trial judge's ruling that the drugs were admissible in evidence.[4]

The confrontation between defendant and the police was initiated by the police as part of their investigation. The three men were on the train platform, defendant having just left the train, when Cody engaged defendant in conversation about his trip from Florida and asked whether defendant had proof of identification. Defendant did not volunteer that he had marijuana or cocaine in his luggage, and he did not offer his luggage to them with the intent to surrender the drugs secreted therein. It was only after Cody mentioned the "drug problem" and asked if the investigators could look in defendant's luggage that defendant agreed to the search.

Obviously, neither the marijuana nor the cocaine would have been uncovered without the inspection of defendant's luggage. Defendant hoped the cocaine would not be discovered and he did not at first reveal that it was in his suitcase. Similarly, he did not tell the officers that he had marijuana in the first bag until he

---

[4] That he agreed to the search, both verbally and in writing, without any coercion, is clear from the record. The judge did not believe defendant's claims that he expressly refused to allow the search and that he signed the "consent to search" form at a later time in another location. We defer to that assessment of the witness's credibility. *State v. Johnson*, 42 *N.J.* 146, 161, 199 *A.2d* 809 (1964).

consented to the search and realized that it would be easily uncovered. Since his admission that he had marijuana was in response to investigatory demands of the officers, it cannot be said that he voluntarily gave over possession of the contraband. Even if he had "voluntarily delivered" the marijuana, his actions with respect to the cocaine hidden in the second piece of luggage were not cooperative. And, of course, he was not prosecuted for possession of the marijuana, just for the cocaine. Although he waived the right to object to the search of his luggage, defendant simply did not, directly or indirectly, initiate the delivery of the marijuana or cocaine to the investigators.

To review, *Patton* concerns the constitutionality of the use of *N.J.S.A.* 2C:35–10c as a method of facilitating "speedy trials" by downgrading cases involving possession of CDS. It holds that a person illegally possessing CDS would be incriminated by delivering the drugs to a law enforcement officer, but the statute created an implied immunity from prosecution for possession of CDS for such a person. Here, on the contrary, the key issue is whether there was a voluntary delivery initiated by the defendant, and we hold there was not because the officers prompted defendant's consent to search during the course of their investigation, and it was only because he was confronted with that investigation that he told them he possessed marijuana and cocaine. Therefore, *N.J.S.A.* 2C:35–10c and its attendant immunity is not implicated here, and the trial judge correctly declined to dismiss the indictment.

Affirmed.