791 A.2d 304

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. D.V., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 30, 2001—Decided February 19, 2002.

108

Before Judges STERN, EICHEN and COLLESTER.

*Peter A. Garcia*, Acting Public Defender, attorney for appellant (*Jay L. Wilensky*, Assistant Deputy Public Defender, of counsel and on the brief).

*John J. Farmer, Jr.*, Attorney General, attorney for respondent (*H. John Witman, III*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

COLLESTER, J.A.D.

Tried to a jury, defendant D.V. appeals from her conviction for three counts of the second degree crime of endangering the welfare of a child in violation of *N.J.S.A.* 2C:24–4a and her sentence of eight years imprisonment concurrent on each count. We affirm.

In June 1998, defendant, a single parent, lived with her three children: J.S., her eight year old son; D.S., a son aged six; and Ja.S., her four year old daughter. Defendant worked part-time at the New Jersey Veteran's Memorial Home with usual hours of 3:00 p.m. to 7:00 p.m. The State's proofs were that on June 29, 2000, the defendant left for work some time in the morning leaving her children at home without any adult supervision. The day was unusually hot with afternoon temperatures reaching 95 to 100 degrees. There was no air conditioner, only one fan and no telephone.

The eight year old son, J.S., testified at trial that on that day his mother closed the windows, shut the blinds and told the children not to answer the door while she was gone. For the next few hours the children were alone. They watched television and played. At one point J.S. cooked scrambled eggs for them on an electric stove.

That afternoon defendant's brother, William, came to the house with his girlfriend and his cousin, Suzanne. As he approached he thought no one was home because the windows were shut and the blinds drawn. When he heard the television, he knocked on the door. He then heard J.S. call that there was someone at the door and D.S. respond, "Mommy said don't answer the door." William identified himself, and "after a bit of an argument," the children opened up the door. He testified the house was very hot, humid and stuffy and had a strong odor of cat urine and feces. Two boys were playing with the cat in the living room while Ja.S. was sitting in spilt milk on the kitchen floor.

Suzanne corroborated that the children were alone, that the house was disheveled with a strong cat odor. She said the children told her that the cat "had gone to the bathroom on their clothes." Ms. Meyer testified that she changed Ja.S.'s wet diaper.

William decided to take the children out of the house. When he looked for some of their clothes, he found cat feces in the drawers. After William took J.S. to his parents' house, his mother called the Division of Youth and Family Services. Suzanne took the other two children to her house. None of the children had any physical injuries.

Later that afternoon there was a confrontation between William and the defendant. He said defendant became "verbally aggressive, screaming and yelling a lot of profanity." He called the State Police and was told to hold the defendant there until their arrival. Accordingly, he "pinned" the defendant in the driver's seat of her car with the butt end of a shotgun. After she backed up, William broke her windshield. When the police arrived, both defendant and William were arrested.

William testified that he and his girlfriend lived with defendant and her children until a month before this incident. They left after several acrimonious incidents. William said that defendant was mad because she wanted them to babysit for the children and they refused.

Testifying on her own behalf, defendant said that on June 29 she left for work at about 2:45 p.m. She stated her regular babysitter was her next door neighbor who was assisted by her three children, ages eighteen, sixteen and fifteen. Since the neighbor had to go out on June 29, defendant left her children at her house in the care of one of the neighbor's children. She maintained that the windows and doors were open when she left for work. She allowed the children to bring a stray cat into the house for the first time that day but denied that the house "reeked" of cat urine. She returned to the house that afternoon at about 5:00 p.m. to find her children missing. Neither the

neighbor nor any of her children testified. Defendant said that they moved out of state.

Defendant maintained that she would never leave her children alone and unsupervised and denied making a contrary statement to the police. However, on rebuttal State Trooper William Donahue testified that defendant told him the following:

> She stated that she needed to leave her kids home alone because she went to work everyday. She advised me that she had some type of understanding with a neighbor. She stated but no one was left in the house to supervise the children. She said that she leaves for work about 2:40 p.m. and returns home somewhere in the area of 7:30 p.m. daily so that she can go to work.

Defendant sets forth the following arguments:

*POINT I*—THE TRIAL COURT'S INSTRUCTION AMOUNTED TO A DIRECTION TO THE JURY TO CONVICT THE DEFENDANT, NECESSITATING REVERSAL. *U.S. CONST.*, AMEND. XIV; *N.J. CONST.* (1947), ART. I, PAR. 10. (Not Raised Below.)

*POINT II*—*N.J.S.A.* 2C:24–4a IS VIOLATIVE OF THE RIGHT TO DUE PROCESS BECAUSE PURSUANT TO IT, CONDUCT WHICH IS DEFINED WITHIN THE STATUTE ITSELF AS A FOURTH–DEGREE CRIME MAY BE, AND IN THE INSTANT CASE WAS, PROSECUTED AS SECOND–DEGREE CRIME. *U.S. CONST.*, AMEND. XIV; *N.J. CONST.* (1947), ART. I, PAR 10. (Not Raised Below.)'

*POINT III*—THE SENTENCE IMPOSED UPON THE DEFENDANT SHOCKS THE CONSCIENCE, AND ACCORDINGLY MUST BE REDUCED.

■ Defendant contends that the trial judge erred in the jury charge by effectively instructing the jury to convict through use of the following language:

> *And it's alleged that* on June 29, 1998, in Pittsgrove Township, Salem County, [Defendant] having a legal duty to care for her three children, knowingly did cause harm to them, *making them abused or neglected children as defined by New Jersey law by leaving them under [sic] supervised in an apartment—a hot apartment, excuse me, with all the doors and windows closed, contrary to the provisions of New Jersey law.*

> The statute upon which these charges are based reads in pertinent part as follows: Any person having the legal duty for the care of a child, or has assumed responsibility for the care of a child, who causes the child harm that would make the child an abused or neglected child is guilty of a crime. In order to find [Defendant] guilty of this crime, the State is required to prove beyond a reasonable doubt the following elements: First, that the victims were children, persons under the age of 18 year of age; second, that [Defendant] had a legal duty for the care of the children or assumed responsibility for the care of the children; and third, that

[Defendant] knowingly caused the children harm that would make the children abused or neglected children. (Emphasis supplied.)

No objection was taken to the charge so that the matter is reviewed under the plain error standard. *R.* 2:10-2; *State v. Hock,* 54 *N.J.* 526, 538, 257 *A.*2d 699 (1969), *cert. denied sub nom, Hock v. New Jersey,* 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.*2d 797 (1970). Defendant claims the judge's use of the phrase "making them abused or neglected children" amounted to a direction to find defendant guilty. There is no merit to this argument. Put in proper context, the trial judge was outlining the allegations in the indictment. When read in its entirety, the charge included the elements of the offense and the State's burden of proof. *See, State v. Delibero,* 149 *N.J.* 90, 106, 692 *A.*2d 981 (1997); *State v. Wilbely,* 63 *N.J.* 420, 422, 307 *A.*2d 608 *certif. denied,* 63 *N.J.* 504, 308 *A.*2d 669 (1973). There was no error, much less plain error.

█ Defendant next claims that her right of due process was violated because the prosecutor had "unbridled, unguided and unarticulated discretion" to charge and prosecute her for endangering the welfare of her children under either *N.J.S.A.* 2C:24-4, a second degree offense, or *N.J.S.A.* 9:6-3, a fourth degree offense, and arbitrarily and unreasonably chose the crime with the greater sentence.

*N.J.S.A.* 2C:24-4a of the Criminal Justice Code provides that

Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child as defined in R.S. 9:6-1, R.S. 9:63 and P.L.1974 c. 119, § .1 (C.9:6-8.21) is guilty of a crime of the second degree.

The statutory Title 2C crime incorporates statutory definitions of child abuse and neglect in the Child Welfare Act, *N.J.S.A.* 9:6-8.21, which is exclusively directed to the protection, maintenance and support of children. *G.S. v. Dept. of Human Serv.,* 157 *N.J.* 161, 176, 723 *A.*2d 612 (1999). In addition to civil remedies and penalties, Title 9 provides the option of criminal consequences for abuse and neglect of children.

Any parent, guardian or person having the care, custody or control of any child, who shall abuse, abandon, be cruel to or neglectful of such child, or any person who shall abuse, be cruel to or neglectful of any child shall be deemed to be guilty of a crime of the fourth degree.

[*N.J.S.A.* 9:6–3.]

The drafters of *N.J.S.A.* 2C:24–4a of the Criminal Justice Code expressed the intention to "incorporate the crime now defined in *N.J.S.A.* 9:6–3 without substantial change except for the penalty provisions." *Final Report of the New Jersey Criminal Law Revision Commission,* Vol. II at 259 (1971). There was no indication that *N.J.S.A.* 2C:24–4a was intended to repeal *N.J.S.A.* 9:6–3. On the contrary, subsequent amendments to both statutes illustrates a legislative understanding that both statutes are to be preserved.[1] We recognized the overlapping of the statutes in *State v. Demarest,* 252 *N.J.Super.* 323, 333, 599 *A.*2d 937 (App.Div. 1991), in which we held that the respective statutes criminalize the same conduct and require the same proof of "knowing culpability."

■ Specific conduct may violate more than one statute, *State v. Blount,* 60 *N.J.* 23, 31, 286 *A.*2d 36 (1972). Where two criminal statutes prohibit the same basic act, the prosecutor may in the exercise of sound discretion proceed under either or both statutes as long as only as single conviction survives. *State v. Gledhill,* 67 *N.J.* 565, 580, 342 *A.*2d 161 (1975); *State v. States,* 44 *N.J.* 285, 291, 208 *A.*2d 633 (1965); *State v. Eure,* 304 *N.J.Super.* 469, 475, 701 *A.*2d 464 (App.Div.), *certif. denied,* 152 *N.J.* 193, 704 *A.*2d 23 (1997); *In re M.C.,* 303 *N.J.Super.* 624, 628–29, 697 *A.*2d 571 (App.Div.1997); *State v. Pessolano,* 343 *N.J.Super.* 464, 475, 778 *A.*2d 1153 (App.Div.), *certif. denied,* 170 *N.J.* 210, 785 *A.*2d 438 (2001); *State v. Pescatore,* 213 *N.J.Super.* 22, 28, 516 *A.*2d 261 (App.Div.1986), *aff'd,* 105 *N.J.* 441, 522 *A.*2d 440 (1987).

The discretionary authority of the prosecutor in enforcement of criminal laws is well-settled. *See, State v. Lagares,* 127 *N.J.* 20,

---

[1] *N.J.S.A.* 9:6–3 was amended by Chapter 26 of the Laws of 1990 to provide that violation was fourth degree offense. *N.J.S.A.* was amended in 1992 to raise the crime from a third to a second degree.

27, 601 *A.*2d 698 (1992); *In re Ringwood Fact Finding Comm.*, 65 *N.J.* 512, 526, 324 *A.*2d 1 (1974). It is the fundamental responsibility of the prosecutor to decide whom to prosecute and what charges are to be considered, *State v. Kraft*, 265 *N.J.Super.* 106, 111, 625 *A.*2d 579 (App.Div.1993). The factual complex, the conduct of defendant and the extent of sentencing exposure are relevant considerations for the prosecutor to consider. *See, Lagares, supra*, 127 *N.J.* at 27, 601 *A.*2d 698. More than two decades ago the United States Supreme Court held that when "an act violates more than one criminal statute, the Government may prosecute against either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 *U.S.* 114, 123–24, 99 *S.Ct.* 2198, 2204, 60 *L.Ed.*2d 755, 765 (1979). *See also, State v. Kittrell*, 145 *N.J.* 112, 127–30, 678 *A.*2d 209 (1996).

there is not appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is distinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone does not give rise to a violation of the Equal Protection of Due Process Clause.

[*Batchelder, supra*, 442 *U.S.* at 125, 99 *S.Ct.* at 2205, 60 *L.Ed.*2d at 765. Citations omitted.]

■ That the prosecutor may select between a crime of the second degree under the Criminal Justice Code and a fourth degree offense under Title 9 does not mean that the exercise of discretion in favor of the charge with the greater penalty is "unfettered" or "unbridled." Generally, where specific conduct may violate more than one statute, the more serious grade or offense will govern. *State v. Eure, supra*, 304 *N.J.Super.* at 475, 701 *A.*2d 464. Furthermore, the primary concern of Title 9 is protection of children, *G.S. v. Dep't of Human Serv.*, 157 *N.J.* 161, 176, 723 *A.*2d 612 (1999), while the focus of the Criminal Justice Code is in fact the criminal culpability of those accused. Those prosecuted for violation of *N.J.S.A.* 9:6–3 are arguably guilty of less egregious or repetitive criminal conduct than those confronted with the second degree penalties of *N.J.S.A.* 2C:24–4a. The

selection of the charge rests in the sound discretion of the prosecutor.

Of course, prosecutorial discretion is not without its limits. Where it is clearly and convincingly shown that an exercise of prosecutorial discretion is arbitrary, capricious or otherwise constitutes a patent or gross abuse of discretion, the judiciary will intervene. *Lagares, supra,* 127 *N.J.* at 33, 601 *A.*2d 698; *State v. Leonardis,* 73 *N.J.* 360, 367, 375 *A.*2d 607 (1977) (*Leonardis II*); *State v. Vasquez,* 129 *N.J.* 189, 196, 609 *A.*2d 29 (1992); *State v. Gonzalez,* 254 *N.J.Super.* 300, 307, 603 *A.*2d 516 (App.Div.1992).

In this case we find no such showing of prosecutorial abuse or misuse of the charging function. Defendant's actions put her children in discomfort and potential danger. There was no abuse in prosecutorial authority in charging the more serious offense of *N.J.S.A.* 2C:24–4a.

■ Defendant next contends that her aggregate sentence of eight years should shock our conscience and mandate a reduction. Prior to sentencing the trial judge made findings of aggravating factors under *N.J.S.A.* 2C:44–1a(3), the risk that defendant will commit another offense; *N.J.S.A.* 2C:44–1a(6), the extent of her prior criminal record; and *N.J.S.A.* 2C:44–1a(9), the need for deterrence. The only mitigating factor noted was *N.J.S.A.* 2C:44–1b(2), that defendant did not contemplate her conduct would cause or threaten serious harm.

At best defendant's criminal history is startling. Since 1994 she has been convicted a total of fourteen times in three states. The bulk of convictions were for property crimes handled as nonindictable offenses. Her most significant conviction was in Nevada where she received a state prison term for attempted grand larceny and received a further custodial term for violation of probation. Her indictable convictions in this State include forgery, credit card fraud and theft. After her arrest on this charge, she was convicted of four additional thefts by deception. Her last prior conviction was for theft from her parents, for which defen-

dant had begun serving an eighteen month state prison term just prior to sentencing in this case. She admitted to daily use of cocaine for over nine years including the time when this offense occurred.

■ In imposing a sentence of one year higher than the presumptive seven year term for a second degree crime, *N.J.S.A.* 2C:44–1f(1)(c), the trial judge identified relevant aggravating and mitigating factors and found that the aggravating factors outweighed the mitigating so that a sentence in excess of the presumptive was appropriate. As a reviewing court, we may modify sentences "when the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience." *State v. Roth,* 95 *N.J.* 334, 363–64, 471 *A.*2d 370 (1984). We find no abuse of sentencing discretion and decline to modify the sentence.

Affirmed.