823 A.2d 34

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. D.A.V., DEFENDANT–APPELLANT.

Argued February 4, 2003—Decided May 29, 2003.

*Jay L. Wilensky,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*H. John Witman, III,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Acting Attorney General of New Jersey, attorney).

PER CURIAM.

The judgment is affirmed, substantially for the reasons expressed in Judge Collester's opinion of the Appellate Division, reported at 348 *N.J.Super.* 107, 791 *A.*2d 304 (2002).

ALBIN, J., concurring.

A parent who abuses or neglects a child can be charged under two identical criminal statutes, second-degree endangering the welfare of child in violation of *N.J.S.A.* 2C:24–4a or fourth-degree cruelty and neglect of children in violation of *N.J.S.A.* 9:6–3. Under the two statutes the same conduct is proscribed in the same language; however, when prosecuted pursuant to *N.J.S.A.* 2C:24–4a, a defendant is exposed to a five- to ten-year state prison term, and when prosecuted pursuant to *N.J.S.A.* 9:6–3, a defendant is exposed only to an eighteen-month prison term. In that respect, it appears that those provisions are unique in the New Jersey Statutes Annotated. Moreover, there are no statutory or administrative guidelines instructing prosecutors on how to determine what circumstances warrant charging under one statute as opposed to the other. In this case, the State charged defendant D.A.V. with three counts of second-degree endangering the wel-

fare of a child, pursuant to *N.J.S.A.* 2C:24–4a. She was convicted of all three charges and sentenced to three concurrent eight-year terms of imprisonment. The Appellate Division affirmed the convictions and sentence. *State v. D.V.,* 348 *N.J.Super.* 107, 791 *A.*2d 304 (App.Div.2002). We granted certification. 174 *N.J.* 39, 803 *A.*2d 634 (2002).

I concur with the majority's decision to affirm the Appellate Division because the record before this Court reveals no basis to conclude that the prosecutor's decision to prosecute defendant for the second-degree offenses under *N.J.S.A.* 2C:24–4a was arbitrary compared to other such cases. However, it is not difficult to imagine the day when there will be a record showing similarly situated defendants charged disparately and suffering widely disparate sentences under those two identical statutes. Uniformity in sentencing is one of the paramount goals of the Code of Criminal Justice (Code). *State v. Lagares,* 127 *N.J.* 20, 31, 601 *A.*2d 698 (1992). Without guidelines, it is inevitable that unjustifiable disparities will follow from the varied application of the two statutes. I, therefore, would direct the Attorney General to develop standards to channel the exercise of prosecutorial discretion in choosing the appropriate statute in abuse cases.

## I.

On the afternoon of June 29, 1998, defendant went to work at her part-time job, leaving her three children, an eight-year-old son, a six-year-old son, and a three-year-old daughter, alone in the home. Before leaving, defendant shut all of the windows in the house, locked the door, and instructed her eldest son not to permit anyone inside. As the outside temperature that afternoon rose to approximately ninety-five degrees, the house, which contained only one fan, became very hot. The house had no telephone and the children were not told what to do in case of an emergency.

Defendant's brother and cousin visited the house that afternoon and found the three children alone. The three-year-old girl was sitting in a soiled diaper in a puddle of milk on the kitchen floor.

The eight-year-old boy had made his siblings scrambled eggs on the electric stove. The house smelled of cat urine and feces. When defendant's cousin went to find a change of clothes for the boys, she could find none that were not sullied by cat excrement. Defendant's brother and cousin immediately removed the children from the home.

Defendant was indicted on three separate counts of endangering the welfare of a child (one for each child) pursuant to *N.J.S.A.* 2C:24–4a. The record does not reveal any basis for the prosecutor's decision to charge and prosecute defendant under *N.J.S.A.* 2C:24–4a, as opposed to *N.J.S.A.* 9:6–3.

## II.

As noted earlier, child abuse and neglect are criminalized in two separate statutes. *N.J.S.A.* 9:6–3, which is part of the Child Welfare Act, states, in relevant part:

> Any parent, guardian or person having the care, custody or control of any child, who shall abuse, abandon, be cruel to or neglectful of such child, or any person who shall abuse, be cruel to or neglectful of any child shall be deemed to be guilty of a crime of the fourth degree.
>
> [*N.J.S.A.* 9:6–3.]

The child endangerment section of the Code incorporates the standards of *N.J.S.A.* 9:6–3, raising child abuse and neglect to a second-degree offense:

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, *or who causes the child harm that would make the child an abused or neglected child as defined in R.S. 9:6–1, R.S. 9:6–3 and P.L.1974, c. 119, s.1 (C.9:6–8.21) is guilty of a crime of the second degree.*
>
> [*N.J.S.A.* 2C:24–4a (emphasis added).]

Child abuse and neglect constitute a fourth-degree crime under *N.J.S.A.* 9:6–3 and a second-degree crime under *N.J.S.A.* 2C:24–4a. The two identical statutes require proof of the same "knowing" level of mental culpability. *State v. Demarest,* 252 *N.J.Super.* 323, 333, 599 *A.2d* 937 (App.Div.1991). The only distinction between the two statutes is the degree of crime and the range of sentence. *State v. N.A.,* 355 *N.J.Super.* 143, 153, 809 *A.2d* 825

(App.Div.2002), *certif. denied,* 175 *N.J.* 434, 815 *A.*2d 480 (2003). No standards are currently in place to guide prosecutorial discretion in selecting under which statute to prosecute a defendant.

In our scheme of justice, the courts have the ultimate responsibility to ensure fairness and uniformity in sentencing. *Lagares, supra,* 127 *N.J.* at 27–28, 601 *A.*2d 698. The prosecutor, however, controls the charging process, which determines the sentencing exposure of a defendant in any particular case. *Id.* at 27, 601 *A.*2d 698. Our courts must pay great deference to those prosecutorial decisions because the separation of powers doctrine demands that respect be given to a coordinate branch of government. *State v. Leonardis (Leonardis II ),* 73 *N.J.* 360, 381, 375 *A.*2d 607 (1977). That deference, however, does not require that courts abdicate their power to promote uniformity in sentencing. *Lagares, supra,* 127 *N.J.* at 27–28, 31, 601 *A.*2d 698.

In furtherance of that imperative, which is grounded in fundamental fairness, this Court has required prosecutors to be guided by uniform guidelines and subject to judicial review on decisions implicating the ultimate sentence of a defendant. *See, e.g., State v. Brimage,* 153 *N.J.* 1, 24–25, 706 *A.*2d 1096 (1998) (ordering Attorney General to promulgate guidelines to channel discretion of prosecutors when deciding whether to waive mandatory terms of imprisonment under *N.J.S.A.* 2C:35–12); *State v. Vasquez,* 129 *N.J.* 189, 196, 609 *A.*2d 29 (1992) (enabling judicial oversight and review of waiver of mandatory terms of imprisonment under *N.J.S.A.* 2C:35–12 by requiring prosecutors to state reasons for waiver or non-waiver on record and requiring promulgation of written guidelines governing exercise of prosecutorial discretion); *Lagares, supra,* 127 *N.J.* at 32, 601 *A.*2d 698 (preserving constitutionality of *N.J.S.A.* 2C:43–6f by requiring prosecutors to state on record reasons for seeking extended sentence and requiring promulgation of guidelines to assist prosecutorial decision-making); and *State v. Leonardis (Leonardis I ),* 71 *N.J.* 85, 119, 121, 363 *A.*2d 321 (1976) (holding that prosecutors must provide statement of reasons for denying consent to admission to pre-trial interven-

tion (PTI) program applicants and requiring PTI programs to be implemented according to uniform guidelines).

Permitting prosecutors to choose at their whim whether to charge between identical child abuse and neglect statutes, one with a maximum range of eighteen months and the other ten years in prison, " 'would add undue variability, inevitable inconsistency, and greater disparity to the sentencing process.' " *Brimage, supra*, 153 *N.J.* at 12, 706 *A.*2d 1096 (quoting *State v. Warren*, 115 *N.J.* 433, 449, 558 *A.*2d 1312 (1989)). In *Brimage, supra*, 153 *N.J.* at 4, 706 *A.*2d 1096, this Court was faced with a challenge to the Attorney General's then-existing plea agreement guidelines regarding waiver of mandatory minimum terms of imprisonment under Section 12 of the Comprehensive Drug Reform Act of 1987, *N.J.S.A.* 2C:35–12. Although those guidelines prescribed statewide minimum plea offers, they permitted county prosecutors' offices to adopt more stringent plea offers. *Brimage, supra*, 153 *N.J.* at 4, 706 *A.*2d 1096. The result was great variation between counties in their plea-bargaining policies that led to disparity in sentencing. *Id.* at 15–16, 17, 19, 706 *A.*2d 1096. We concluded that the Attorney General should adopt new guidelines to assure uniformity among the twenty-one counties. In reaching that outcome, the Court reviewed its prior decisional law, concluding that

> the *Vasquez/Lagares* line of cases held that judicial review of prosecutorial decisions through uniform written guidelines was necessary not only to meet the requirements of the separation of powers doctrine, but also to comport with the statutory goal of increasing uniformity in sentencing.
>
> [*Id.* at 13, 706 *A.*2d 1096.]

I urge the Attorney General to promulgate guidelines to assist prosecutors in choosing whether to prosecute a defendant under *N.J.S.A.* 2C:24–4a or *N.J.S.A.* 9:6–3. The guidelines need not be Byzantine or prolix, but sufficient to guide the discretion of prosecutors so that rational distinctions are made in applying the appropriate statute. Without such guidance, it is inevitable that glaring disparities will arise as different prosecutors and different prosecutor's offices choose between the two statutes based on

personal preference or philosophy rather than an objective distinction. A proper respect for the function of coordinate branches of government, the judiciary and the executive, can be achieved by standards that promote uniform sentencing policies. Guidelines that facilitate fairness in the charging process and, therefore, fairness in sentencing with respect to those statutes will likely avert a future constitutional challenge.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.