NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2922-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LEE E. MOORER,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

December 29, 2016

APPELLATE DIVISION

Submitted October 17, 2016 — Decided December 29, 2016

Before Judges Fisher, Ostrer, and Leone.

On appeal from Superior Court of New Jersey, Law Division, Salem County, Indictment No. 13-09-0514.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen P. Hunter, Assistant Deputy Public Defender, of counsel and on the brief).

John T. Lenahan, Salem County Prosecutor, attorney for respondent (Lisa M. Rastelli, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Defendant appeals his December 17, 2014 judgment of conviction for third-degree possession of a controlled dangerous substance (CDS) under N.J.S.A. 2C:35-10(a)(1).  He argues the

trial court should have instructed the jury on what he claims is a lesser-included offense: failure to deliver a CDS to a law enforcement officer, N.J.S.A. 2C:35-10(c). We affirm. We hold that "failure to make lawful disposition" under N.J.S.A. 2C:35-10(c) is not a lesser-included offense of possession of a CDS under N.J.S.A. 2C:35-10(a). We also hold that under New Jersey's evidence rule permitting substantive use of consistent statements to rebut "recent fabrication," N.J.R.E. 803(a)(2), fabrication is "recent" if it post-dates a prior consistent statement.

The testimony at trial included the following facts. On May 31, 2013, Detective Nicholas Bowen received an anonymous tip stating two females would leave a house on Broad Street in Salem. He was told they would "retrieve money from the . . . ATM machine at the Deepwater Credit Union . . . and walk back to purchase crack cocaine from [a] black male." After receiving this information, Bowen started surveillance to corroborate the tip.

Detective Bowen observed two females walk to Deepwater Credit Union, appear to withdraw money from the ATM, and walk toward the house on Broad Street. When Bowen called to one of the women to stop, they began running toward the house. Bowen chased after them, joined by Patrolman James Endres. When the

women approached the door to the Broad Street house, one of them yelled something to the effect of, "It's the cops. Toss your shit." Bowen and Endres followed them into the house, where the officers found defendant, another male, and a female seated on a couch in the living room.

Bowen observed the other male throw a cigarette pack into the dining room. Bowen and Endres retrieved the cigarette pack and discovered a crack pipe inside. They placed the other male under arrest.

The officers' attention was then drawn to defendant, who "became fidgety and kept looking around." Both Detective Bowen and Patrolman Endres testified they saw defendant surreptitiously take off his hat and throw it behind the couch. The officers saw what appeared to be a crack rock near defendant's feet. Defendant was placed under arrest. The officers then checked near the hat and found two additional pieces of crack cocaine.

A jury convicted defendant of third-degree possession of cocaine in violation of N.J.S.A. 2C:35-10(a)(1). On December 12, 2014, the trial court sentenced him to three years of probation.

Defendant appeals, raising two points:

> POINT I - THE FAILURE TO CHARGE A LESSER-INCLUDED OFFENSE REQUESTED BY THE DEFENSE

THAT WAS RATIONALLY BASED IN THE RECORD DENIED DEFENDANT A FAIR TRIAL. U.S. Const. Amend. XIV; N.J. Const. Art. I, ¶ 1.

POINT II - THE IMPROPER ADMISSION OF PRIOR CONSISTENT STATEMENTS OVER DEFENSE OBJECTION TO BOLSTER THE STATE'S PRIMARY WITNESS DENIED DEFENDANT A FAIR TRIAL. U.S. Const. Amend. XIV; N.J. Const. Art. I, ¶ 1.

## II.

Defendant argues the trial court erred when it denied his request to instruct the jury that failure to make a lawful disposition of a CDS, N.J.S.A. 2C:35-10(c), was a lesser-included offense of possession of a CDS, N.J.S.A. 2C:35-10(a). The court stated it did not believe failure to make a lawful disposition was a lesser-included offense but it would "look at that charge tonight and see if it fits." Although defendant again raised the issue on the second day of trial, further discussion was postponed, no decision was made, and no instruction was given on the offense of failure to make a lawful disposition. Nonetheless, no error occurred because we hold N.J.S.A. 2C:35-10(c) is not a lesser-included offense of N.J.S.A. 2C:35-10(a).

N.J.S.A. 2C:35-10(a) provides: "It is unlawful for any person, knowingly or purposely, to obtain, or to possess, actually or constructively, a controlled dangerous substance or

controlled substance analog."[1]  Defendant contends he was entitled to an instruction on N.J.S.A. 2C:35-10(c) as a lesser-included offense.  N.J.S.A. 2C:35-10(c) provides:

> Any person who knowingly obtains or possesses a controlled dangerous substance or controlled substance analog in violation of subsection a. of this section and who fails to voluntarily deliver the substance to the nearest law enforcement officer is guilty of a disorderly persons offense. Nothing in this subsection shall be construed to preclude a prosecution or conviction for any other offense defined in this title or any other statute.

"On its face, the statute applies only to those who obtain or possess controlled dangerous substances in violation of N.J.S.A. 2C:35-10a."  State v. Patton, 133 N.J. 389, 398 (1993).

To determine if failure to make a lawful disposition is a lesser-included offense of possession of a CDS, we look to N.J.S.A. 2C:1-8(d), which "governs lesser-included offenses." State v. Maloney, 216 N.J. 91, 106 (2013).  N.J.S.A. 2C:1-8(d) provides:

> A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense.  An offense is so included when:
>
> > (1)  It is established by proof of the same or less than all the facts required to establish the

---

[1] The violation is a third-degree crime if the CDS is "classified in Schedule I, II, III or IV."  N.J.S.A. 2C:35-10(a)(1).

commission of the offense charged; or

(2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or

(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

In addition, N.J.S.A. 2C:1-8(e) provides: "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."

> [N.J.S.A. 2C:1-8(e)] has been characterized and construed as requiring not only a rational basis in the evidence for a jury to convict the defendant of the included offense but requiring also a rational basis in the evidence for a jury to acquit the defendant of the charged offense before the court may instruct the jury on an uncharged offense.
>
> [State v. Brent, 137 N.J. 107, 113-14 (1994).]

Thus, a party seeking a lesser-included offense charge must show "(1) that the requested charge satisf[ies] the definition of an included offense set forth in N.J.S.A. 2C:1-8d, and (2) that there [is] a rational basis in the evidence to support a charge

on that included offense." Maloney, supra, 216 N.J. at 107 (quoting State v. Thomas, 187 N.J. 119, 131 (2006)).

N.J.S.A. 2C:35-10(c) is not a lesser-included offense of N.J.S.A. 2C:35-10(a) under any of the subsections of N.J.S.A. 2C:1-8(d). Subsection (d)(1) does not apply because N.J.S.A. 2C:35-10(c) requires both that the defendant knowingly possessed a CDS in violation of N.J.S.A. 2C:35-10(a) and that the defendant failed to deliver that substance to a law enforcement officer. Thus, N.J.S.A. 2C:35-10(c) requires a second element not required by N.J.S.A. 2C:35-10(a). Subsection (d)(2) is not applicable because N.J.S.A. 2C:35-10(c) involves neither conspiracy nor attempt. Subsection (d)(3) does not apply because N.J.S.A. 2C:35-10(c) requires a violation of N.J.S.A. 2C:35-10(a) and thus cannot be said to be satisfied by a lesser injury, risk, or culpability.

Indeed, the legislative history of N.J.S.A. 2C:35-10(c) shows it was enacted to give prosecutors "a method of facilitating 'speedy trials' by downgrading cases involving possession of CDS" under N.J.S.A. 2C:35-10(a). State v. Gredder, 319 N.J. Super. 420, 425 (App. Div. 1999). In Patton, our Supreme Court reviewed N.J.S.A. 2C:35-10(c)'s legislative history. After the 1987 enactment of the Comprehensive Drug Reform Act of 1986, there was "a dramatic increase in the number

of drug arrests" which "exacerbated the pressure on the criminal courts." Patton, supra, 133 N.J. at 393—94. "[T]he Supreme Court Task Force on Speedy Trial acknowledged that the caseload of the criminal-justice system could be reduced significantly by prosecutors exercising their discretion to refer matters to municipal court for prosecution as disorderly-persons offenses." Id. at 394.

The Task Force recommended the Legislature enact a statute "creating appropriate disorderly persons offenses for possession of small quantities of certain drugs . . . to permit the use of prosecutorial discretion in the charging and screening process." Ibid. (quoting N.J. Supreme Court 1986 Judicial Conference on Speedy Trial, Report of the Committee on Delay Points and Problems Affecting Speedy Trial 53 (1986)). In 1988, the Legislature "implement[ed] th[at] recommendation" by amending N.J.S.A. 2C:35-10 to add subsection (c) for "use[] only as a mechanism to downgrade simple possession, an indictable offense, to a disorderly-persons offense." Id. at 394, 401.

We faced a similar situation in State v. N.A., 355 N.J. Super. 143 (App. Div. 2002), certif. denied, 175 N.J. 434 (2003). There, we held N.J.S.A. 9:6-3 was not a lesser-included offense of N.J.S.A. 2C:24-4(a). Id. at 154. The Legislature enacted N.J.S.A. 2C:24-4(a) to make it a second-degree offense

for a person having care of a child to "make [the] child an abused or neglected child as defined in" N.J.S.A. 9:6-3. N.J.S.A. 2C:24-4(a). N.J.S.A. 9:6-3 already made it a fourth-degree crime for such a person to abuse or neglect a child. In enacting N.J.S.A. 2C:24-4(a), the Legislature's "'intent [wa]s to incorporate the crime now defined in [N.J.S.A.] 9:6-3 without substantial change except for the penalty provisions.'" N.A., supra, 355 N.J. Super. at 153 (citation omitted). We found "a legislative intent that both statutes are to be preserved perhaps to provide prosecutors the option of charging a lesser offense under appropriate circumstances." Ibid.

"Under these unique circumstances," we concluded in N.A. that N.J.S.A. 9:6-3 "should not have been charged as a lesser included offense" of N.J.S.A. 2C:24-4(a). Id. at 154. "Submission of both offenses would involve the jury in the act of imposition of sentence." Ibid. We stressed that generally "a jury's consideration of the evidence is confined to what, if any, offenses have been committed by the defendant rather than the penalty which may or must be imposed." Ibid. "The rationale for this limitation is that sentencing information fails to help the jury in deciding the issue of guilt, distracts the jury by confusing the issues to be decided, and invites a compromise verdict." Ibid. "Submission of both offenses would

transform the traditional function of the jury, a consequence which should not occur lightly. Rather, we elect to defer to the discretion reposed in the prosecutor regarding the nature and extent of the charges to be presented to the Grand Jury." Ibid.

In N.A., we followed the lead of State v. D.V., 348 N.J. Super. 107 (App. Div. 2002), aff'd o.b., 176 N.J. 338 (2003), which ruled that a "prosecutor may select between a crime of the second degree under [N.J.S.A. 2C:24-4(a)] and a fourth degree offense under [N.J.S.A. 9:6-3]" and that "[t]he selection of the charge rests in the sound discretion of the prosecutor." Id. at 115-16 (citation omitted). This in turn reflected the "well 'settled rule' that when 'an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.'" State v. Kittrell, 145 N.J. 112, 129 (1996) (quoting United States v. Batchelder, 442 U.S. 114, 123-24, 99 S. Ct. 2198, 2204, 60 L. Ed. 2d 755, 764-65 (1979)); see D.V., supra, 348 N.J. Super. at 114-15.

In enacting N.J.S.A. 2C:35-10(c), the Legislature similarly intended "'to incorporate the crime now defined in [N.J.S.A. 2C:35-10(a)] without substantial change except for the penalty provisions'" in order "to provide prosecutors the option of

charging a lesser offense under appropriate circumstances." See N.A., supra, 355 N.J. Super. at 153 (citation omitted). For similar reasons, N.J.S.A. 2C:35-10(c) should not be charged as a lesser-included offense because "[s]ubmission of both offenses would involve the jury in the act of imposition of sentence." See id. at 154.

In addition, "'to justify a lesser included offense instruction, a rational basis must exist in the evidence for a jury to acquit the defendant of the greater offense as well as to convict the defendant of the lesser, unindicted offense.'" State v. Funderburg, 225 N.J. 66, 81 (2016) (citation omitted); see, e.g., State v. Cagno, 211 N.J. 488, 522 (2012), cert. denied, __ U.S. __, 133 S. Ct. 877, 184 L. Ed. 2d 687 (2013). There could never be a rational basis for a jury to convict a defendant of violating N.J.S.A. 2C:35-10(c) while acquitting him of violating N.J.S.A. 2C:35-10(a), as a defendant must be "in violation of subsection a." to violate N.J.S.A. 2C:35-10(c). Absent such a "rational basis," it is inappropriate to instruct on N.J.S.A. 2C:35-10(c) as a lesser-included offense of N.J.S.A. 2C:35-10(a).

For the same reasons, the trial court was not required to instruct the jury on N.J.S.A. 2C:35-10(c) as a related offense. See Thomas, supra, 187 N.J. at 132-34. "[R]elated offenses are

those that 'share a common factual ground, but not a commonality in statutory elements, with the crimes charged in the indictment.'" Maloney, supra, 216 N.J. at 107 (quoting Thomas, supra, 187 N.J. at 132). "A court may instruct on a related offense when 'the defendant requests or consents to the related offense charge, and there is a rational basis in the evidence to sustain the related offense.'" Id. at 108 (quoting Thomas, supra, 187 N.J. at 133). Here, there was no rational basis for the jury to convict defendant of failure to make a lawful disposition but acquit him of possession of a CDS. Cf. id. at 111-14 (Albin, J., dissenting) (asserting the trial court should have instructed on a related offense so the jury could have convicted on that charge and acquitted on the greater charge). Absent such a rational basis, giving an instruction on a related offense is improper because

> a trial court cannot charge a jury on any offense requested by the defendant or suggested by the evidence. A trial court should not "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty. The prosecutor has the primary charging responsibility[.]"
>
> [Thomas, supra, 187 N.J. at 133 (quoting Brent, supra, 137 N.J. at 118).]

A-2922-14T1

Defendant next challenges the admission of Detective Bowen's prior consistent testimony concerning whether defendant took off his hat and threw it behind the couch. "'Considerable latitude is afforded a trial court in determining whether to admit evidence, and that determination will be reversed only if it constitutes an abuse of discretion.'" State v. Kuropchak, 221 N.J. 368, 385 (2015) (citation omitted). "Under that standard, an appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling "was so wide of the mark that a manifest denial of justice resulted."'" Id. at 385-86 (citations omitted). We must hew to that standard of review.

Detective Bowen wrote a report the night of the May 31, 2013 arrest. Patrolman Endres did not complete his report until June 7, 2013. Although Endres's report mentioned that defendant took off his hat and threw it behind the couch, Bowen's report did not.

In her opening statement, defense counsel told the jury:

> One officer is going to testify consistent with the report that he authored. A report that claims that Mr. Moorer took off his hat, threw it behind the couch.
> That officer is going to testify that Mr. Moorer made certain comments about why he tossed the hat behind the couch.

That officer is going to testify that he went behind the couch and found a small quantity of crack cocaine next to the hat that Mr. Moorer had been wearing. . . .

The other officer, hopefully, will testify consistent with his observations, as they were recorded in his report. I'm not going to blow the trumpet right now. Instead, I'm going to ask you to pay close attention.

On direct, Detective Bowen testified that he observed defendant on the couch "mov[ing] his hat off" and that it "went directly behind him." Bowen testified defendant looked "like he was trying to . . . avoid detection." He also testified that he forgot to mention defendant's discarding the hat in his report, probably because of the lateness of the hour when he prepared the report.

Defense counsel cross-examined Bowen repeatedly about the hat. She asked: if he was trained to record his observations in his report; if it contained everything he perceived; if his report contained all the important details; and if the detail about the hat was important. She marked Bowen's report as an exhibit, had Bowen read it, and asked if it mentioned defendant taking off his hat. She questioned Bowen's claim that he forgot to mention the hat due to the late hour when the report was prepared. She also asked if Bowen had reviewed his report "before testifying here today," if he had reviewed "anybody

else's report," and if he saw "Patrolman Endres's report after he wrote it," which Bowen said he might have seen.

On redirect, the prosecutor asked Bowen if he testified on a prior occasion. When defense counsel objected, the prosecutor argued that defense counsel had attacked Bowen's credibility using a prior inconsistent statement and that Bowen "can be rehabilitated with a prior consistent statement" under N.J.R.E. 803. The trial court overruled the objection, finding that defense counsel made "a suggestion" that the hat was only recently mentioned by Bowen, and thus that N.J.R.E. 803(a)(2) allowed the use of Bowen's prior consistent testimony to rebut an implication of recent fabrication. Accordingly, Bowen read from a prior transcript where he had testified: "I noticed that Mr. Moorer made a quick movement with his hand and . . . took [his hat] off and put it behind the couch."[2]

In her closing argument, defense counsel made explicit what was implicit in her opening and cross-examination. She argued Detective Bowen and Patrolman Endres were lying about defendant taking off a hat and throwing it behind the couch. She emphasized Bowen's training and experience in writing reports,

---

[2] The parties both represent to us that Bowen read from his grand jury testimony. At trial, however, the prosecutor stated it was "not a Grand Jury Transcript," it was "a transcript from a prior proceeding."

the importance of accurate reports, and the failure of Bowen's report "to mention anything about Mr. Moorer wearing a hat or removing it" as Bowen testified at trial. She argued "there's no way that . . . Detective Bowen[] would omit those details because he was tired or [because of the] lateness of the hour. That's just an excuse." She argued that it was "curious" that Bowen's report differed from Endres's report and that "the State tried to have Bowen diffuse that bomb on direct examination."

The trial court properly admitted Bowen's prior testimony under N.J.R.E. 803(a)(2), which provides:

> A statement previously made by a person who is a witness at a trial or hearing [is not excluded by the hearsay rule], provided it would have been admissible if made by the declarant while testifying and the statement . . . is consistent with the witness' testimony and is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive.

"A 'charge' of recent fabrication can be effected through implication by the cross-examiner[.]" State v. Johnson, 235 N.J. Super. 547, 555 (App. Div.) (quoting State v. King, 115 N.J. Super. 140, 146 (App. Div.), certif. denied, 59 N.J. 268 (1971)), certif. denied, 118 N.J. 214 (1989). Further, such a charge can be implied in the opening statement and confirmed by the closing argument.

Here, implicitly in her opening statement and cross-examination, and explicitly in her closing argument, defense counsel suggested to the jury that Detective Bowen fabricated his testimony that defendant discarded the hat, contrary to his report which did not mention defendant discarding the hat. Moreover, defendant repeatedly implied Detective Bowen's fabrication was recent. Defense counsel's opening comment that Detective Bowen "hopefully, will testify consistent with his observations, as they were recorded in his report," suggested that if he did not, he would be fabricating a new story on the witness stand. Defense counsel's cross-examination — asking if Bowen reviewed his report "before testifying here today," reviewed "anybody else's report," and saw "Patrolman Endres' report after he wrote it" — implied that Bowen might have reviewed Endres's report in preparation for testifying at trial, giving rise to a motive to fabricate to mirror Endres's version of the facts. Defense counsel's closing argument that "the State tried to have Bowen diffuse [the difference between his report and Endres's report] on direct examination" implied that the State had instructed Bowen to give testimony similar to Endres's report.

Therefore, it was not an abuse of discretion for the trial court to find an "implied charge against the witness of recent

fabrication." N.J.R.E. 803(a)(2). We defer to the trial court's first-hand observations.

> [I]t is the impression the cross-examiner makes upon the jury in the heat of the trial rather than what an appellate court would discern from a coldly analytical study of the testimony which must control review of the somewhat discretionary exercise of judgment made by the trial judge in the matter.
>
> [Johnson, supra, 235 N.J. Super. at 555-56 (quoting King, supra, 115 N.J. Super. at 146-47).]

Nonetheless, defendant argues defense counsel never claimed Bowen's testimony was a recent fabrication or "a 'recent contrivance.'" State v. Gomez, 246 N.J. Super. 209, 223 (App. Div. 1991) (quoting State v. Sullivan, 24 N.J. 18, 39, cert. denied, 355 U.S. 840, 78 S. Ct. 52, 2 L. Ed. 2d 51 (1957)). Defendant argues defense counsel instead merely employed impeachment using a prior inconsistent statement. "An attack on a party's credibility through prior inconsistent statements does not necessarily give plaintiff the right to use a prior consistent statement to buttress the party's credibility." Palmisano v. Pear, 306 N.J. Super. 395, 403 (App. Div. 1997).

Here, however, defense counsel's opening, cross-examination, and closing all implied that Detective Bowen accurately recorded the events when he wrote his report on the night of the arrest and that he recently fabricated a new

18

version of events when testifying, or in preparation for testifying, at trial. See Johnson, supra, 235 N.J. Super. at 555 (admitting a witness's prior statement after the "defense counsel highlighted several inconsistencies in details between the prior statement and [the witness's] trial testimony, thus creating the inference that [he] had not been truthful at trial").

Such fabrication during trial or in preparation for trial is certainly "recent" in common parlance. See King, supra, 115 N.J. Super. at 146 (admitting a witness's statement to police and grand jury testimony where the defense counsel alluded to the witness's threat a week before trial that she would lie at the trial).

Moreover, Bowen's prior consistent testimony occurred in a proceeding prior to trial, and apparently prior to trial preparation. Where the prior consistent statement was made before the motive to fabricate arose, the fabrication is "recent" enough under N.J.R.E. 803(a)(2). "The scope of the exception encompasses prior consistent statements made by the witness before the alleged 'improper influence or motive' to demonstrate that the witness did not change his or her story."

<u>Neno v. Clinton</u>, 167 <u>N.J.</u> 573, 580 (2001).[3]  "[T]hough the common phrase is 'recent' fabrication or contrivance, the term 'recent' is misleading.  It is not required to be near in point of time to the trial, but only that the alleged contrivance be closer to the trial in point of time than the consistent statement."  2 <u>McCormick on Evidence</u> § 47, at 316 n.36 (Broun ed., 2013); <u>accord</u> <u>Mason v. United States</u>, 53 <u>A.</u>3d 1084, 1090 n.4 (D.C. 2012).  Thus, "the word 'recent' means that the prior consistent statement which may be admitted is one made before the alleged motive to fabricate arose."  <u>Powers v. Cheeley</u>, 771 <u>P.</u>2d 622, 625 (Or. 1989); <u>see</u> <u>People v. Singer</u>, 89 <u>N.E.</u>2d 710, 711 (N.Y. 1949) ("'[R]ecent' as so used, has a relative, not an absolute meaning"); <u>accord</u> <u>Jones v. State</u>, 889 <u>S.W.</u>2d 706, 716 (Ark. 1994).  Thus, we hold fabrication is "recent" if it post-dates a prior consistent statement.

In that situation, the prior consistent statement has clear probative value:

> Impeachment by charging that the testimony is a recent fabrication or results from an improper influence or motive is, as a general matter, capable of direct and forceful refutation through introduction of out-of-court consistent statements that

---

[3] In any event, as we discuss below, we have interpreted the scope of the exception even more broadly.  <u>See</u> <u>State v. Muhammad</u>, 359 <u>N.J. Super.</u> 361, 387-88 (App. Div.), <u>certif. denied</u>, 178 <u>N.J.</u> 36 (2003).

> predate the alleged fabrication, influence, or motive. A consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive.
>
> [Tome v. United States, 513 U.S. 150, 158, 115 S. Ct. 696, 701, 130 L. Ed. 2d 574, 582-83 (1995).]

In any event, New Jersey has never adopted a strict temporal requirement for the admission of a prior consistent statement. "New Jersey's previous rule on the admissibility of prior consistent statements was contained in Evid. R. 20[.]" State v. Chew, 150 N.J. 30, 78 (1997), cert. denied, 528 U.S. 1052, 120 S. Ct. 593, 145 L. Ed. 2d 493 (1999). "[T]he predecessor Rule 20 was interpreted as not to contain a temporal requirement 'that a party seeking admission of a prior consistent statement show that the prior statement was made before any alleged motive to falsify existed on the part of the declarant.'" Id. at 79 (quoting Johnson, supra, 235 N.J. Super. at 556).

In 1993, New Jersey adopted N.J.R.E. 803(a)(2), which both "repeats a portion of N.J Evid. R. 20" and "follows Fed. R. Evid. 801(d)(1)(B) verbatim." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence [hereinafter Biunno], 1991 Supreme Court Committee Comment on N.J.R.E. 803(a) (2016). Our Supreme Court declined to "resolve whether N.J.R.E. 803(a)(2)

contains the temporal requirement of the federal rule." Chew, supra, 150 N.J. at 81. Subsequently, we reaffirmed that "[t]here has been no clear determination, either by Rule amendment or case law, since Chew to impose a mandatory temporal requirement on N.J.R.E. 803(a)(2)." Muhammad, supra, 359 N.J. Super. at 388.

Accordingly, it was not an abuse of discretion to admit Detective Bowen's consistent testimony to help refute the allegation of recent fabrication. See Chew, supra, 150 N.J. at 80—81 (admitting consistent statements made after some motive to fabricate arose, but before other motives to fabricate arose); Muhammad, supra, 359 N.J. Super. at 388—89 (same).

Finally, the admission of the prior statement "did not constitute prejudicial error." Johnson, supra, 235 N.J. Super. at 556-57. There was substantial evidence of defendant's guilt aside from defendant's discarding of the hat. Detective Bowen and Patrolman Endres discovered defendant inside a house where they found drugs. When the officers arrived, defendant became "fidgety." The officers discovered a crack rock near his feet and two additional pieces of crack cocaine near where he was sitting.

Moreover, there was other evidence of defendant's discarding of his hat besides Bowen's testimony. Endres

independently testified that defendant "quickly . . . grabbed [his hat] and moved it back a little bit and then quickly . . . pushed it. Like just discarded it right behind him." Finding this suspicious, Endres asked "why he took his hat off," to which defendant said "he didn't feel like wearing it anymore." Given this and other evidence, the admission of Bowen's duplicative prior testimony was not reversible error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2922-14T1